Opinion
KENNARD, J.—
In the companion case of People v. Lasko (2000) 23 Cal.4th 101 [96 Cal.Rptr.2d 441, 999 P.2d 666], we hold that a defendant who, with conscious disregard for life and the knowledge that such conduct endangers the life of another, unintentionally but unlawfully kills in a sudden quarrel or the heat of passion is guilty only of voluntary manslaughter rather than murder. Here, we hold in a case of first impression that voluntary manslaughter is also committed when a defendant, acting with conscious disregard for life and the knowledge that the conduct is life-endangering, unintentionally but unlawfully kills while having an unreasonable but good faith belief in the need to act in self-defense.
I
On October 25, 1994, defendant George John Blakeley and his friend, David Fraire, spent the early afternoon drinking brandy in a park in Vallejo, California. They then went to defendant’s home. Also there were Steven Blakeley (defendant’s brother), Tony Santiago, and Lionel Vallo (a friend of Santiago’s). Fraire passed around bottles of beer, and Vallo bought $20 worth of methamphetamine from defendant.
Vallo, who had been drinking, asked about the quality of the methamphetamine, saying that some methamphetamine he had recently bought from Santiago had been “bunk.” Santiago told Vallo, “fuck you,” and Vallo replied, “fuck you.” Defendant said to both Santiago and Vallo, “shut the fuck up”; Vallo told defendant, “you shut the fuck up.”
Defendant told Vallo to leave the house. Vallo, who was six feet tall and weighed 205 pounds, swung a beer bottle at defendant, who was five feet five inches tall and weighed 140 pounds, but missed. Defendant then hit Vallo in the head with an unopened bottle of beer. The bottle shattered, *86 cutting Vallo’s cheek. After throwing a beer bottle at defendant, but missing him, Vallo charged at defendant. Defendant drew a large knife from a sheath on his belt and a struggle ensued. Santiago pulled Vallo off defendant. Vallo was bleeding heavily from a stab wound to the chest. Fraire told defendant “let’s go,” and defendant, weeping, drove Fraire home.
After telling his friend Vallo, “You dying, ain’t nothing I could do, you got it to the heart,” Santiago asked Steven Blakeley (who had been out of the room during the fight) to “call 911” and then left. The police and paramedics soon arrived but were unable to save Vallo, who died shortly thereafter from a single stab wound to the heart. Defendant fled, eventually turning up at his uncle’s home in San Bernardino. His uncle called the police.
At trial, eyewitness accounts of the stabbing differed. Vallo’s friend Santiago testified defendant had made a motion “like an uppercut” with the knife as Vallo charged him, and Vallo almost immediately went limp, falling on top of defendant. Fraire, defendant’s friend, testified that after Vallo attacked defendant the two struggled for “half a minute or so”; he did not see defendant stab Vallo. Defendant, who testified on his own behalf, claimed he drew his knife to defend himself when Vallo charged him, that the two of them fought and went down on the floor, and that Vallo apparently impaled himself on the knife during the struggle. He did not realize Vallo had been stabbed until after the fight was over.
The trial court instructed the jury on the charged crime of murder as well as the lesser included offenses of voluntary and involuntary manslaughter. As to voluntary manslaughter, the trial court explained: “Every person who unlawfully kills another human being without malice aforethought but with an intent to kill is guilty of voluntary manslaughter .... There is no malice aforethought if the killing occurred in the honest but unreasonable belief in the necessity to defend oneself against imminent peril to life or great bodily injury.” (Italics added.) The court refused to give defendant’s requested instruction that a killing is involuntary manslaughter when the killer, acting in an unreasonable but good faith belief in the necessity of self-defense, unintentionally causes the victim’s death.[1] Instead, the court gave the jury *87 CALJIC No. 8.45, the standard instruction on involuntary manslaughter.[2] The jury convicted defendant of voluntary manslaughter.
The Court of Appeal affirmed the conviction. The court reasoned: “[Unreasonable self-defense] has no special bearing on the crime of involuntary manslaughter. It neither allows a conviction of this crime, nor prevents one.” Because “[t]here was no instruction . . . that prevented the jury from considering involuntary manslaughter,” the Court of Appeal said, the trial court did not have to give defendant’s requested instruction. We granted review.
n
As we did in the companion case of People v. Lasko, supra, 23 Cal.4th 101, we begin our analysis by exploring the differences between murder and the lesser offense of manslaughter. Murder is the unlawful killing of a human being with malice aforethought. (Pen. Code, § 187, subd. (a).)[3] Malice may be either express or implied. It is express when the defendant manifests “a deliberate intention unlawfully to take away the life of a fellow creature.” (§ 188.) It is implied “when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.” (Ibid.) This statutory definition of implied malice, we have said, “has never proved of much assistance in defining the concept in concrete terms” (People v. Dellinger (1989) 49 Cal.3d 1212, 1217 [264 Cal.Rptr. 841, 783 P.2d 200]), and juries should be instructed that malice is implied “when the killing results from an intentional act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life” (id. at p. 1215). As in the companion case of People v. Lasko, for convenience we shall describe this mental state as “conscious disregard for life.”
Manslaughter is “the unlawful killing of a human being without malice.” (§ 192.) A defendant lacks malice and is guilty of voluntary manslaughter in “limited, explicitly defined circumstances: either when the *88 defendant acts in a ‘sudden quarrel or heat of passion’ (§ 192, subd. (a)), or when the defendant kills in ‘unreasonable self-defense’—the unreasonable but good faith belief in having to act in self-defense (see In re Christian S. (1994) 7 Cal.4th 768 [30 Cal.Rptr.2d 33, 872 P.2d 574]; People v. Flannel [(1979)] 25 Cal.3d 668 [160 Cal.Rptr. 84, 603 P.2d 1]).” (People v. Barton (1995) 12 Cal.4th 186, 199 [47 Cal.Rptr.2d 569, 906 P.2d 531].) At issue here is the second type of voluntary manslaughter: when a defendant kills in unreasonable self-defense. (The other form of voluntary manslaughter— when the defendant kills in a sudden quarrel or heat of passion—is addressed in the companion case of People v. Lasko, supra, 23 Cal.4th 101.)
A person who intentionally kills in unreasonable self-defense lacks malice and is guilty only of voluntary manslaughter, not murder. (People v. Barton, supra, 12 Cal.4th at p. 199; see also People v. Breverman (1998) 19 Cal.4th 142, 154 [77 Cal.Rptr.2d 870, 960 P.2d 1094]; People v. Saille (1991) 54 Cal.3d 1103, 1107, fn. 1 [2 Cal.Rptr.2d 364, 820 P.2d 588]; People v. Flannel, supra, 25 Cal.3d 668.) But what offense is committed when a person, acting with a conscious disregard for life, unintentionally kills a human being, but the killing occurs in unreasonable self-defense? Is the killer guilty of murder, voluntary manslaughter, or involuntary manslaughter?
We have in the past said that in these circumstances the killer is not guilty of murder: “[I]mplied malice is shown when ‘the defendant for a base, antisocial motive and with wanton disregard for human life, does an act that involves a high degree of probability that it will result in death.’ ... A defendant who acts with the requisite actual belief in the necessity for self-defense does not act with the base motive required for implied malice, i.e., with ‘an abandoned and malignant heart.’ [Citation.] A contrary conclusion, namely, that imperfect self-defense applies only in cases of express, but not implied, malice would lead to a totally anomalous and absurd result, in which a defendant, who unreasonably believes that his life is in imminent danger, would be guilty only of manslaughter if he acts with the intent to kill his perceived assailant, but would be guilty of murder if he does not intend to kill, but only to seriously injure, the assailant. There is no authority to support such an incongruous rule.” (In re Christian S., supra, 7 Cal.4th at p. 780, fn. 4, some italics omitted.)
Defendant here asserts that one who unintentionally and unlawfully kills in unreasonable self-defense is guilty only of involuntary manslaughter. We have never before decided whether in these circumstances a defendant is guilty of voluntary or involuntary manslaughter. As we shall explain, we conclude that when a defendant, acting with conscious disregard for life, *89 unintentionally kills in unreasonable self-defense, the killing is voluntary, not involuntary, manslaughter.
Defendant’s claim that an unintentional killing in unreasonable self-defense is involuntary manslaughter is based on the assumption that intent to kill is a necessary element of voluntary manslaughter. As he points out, we have said so in a number of cases. (See, e.g., People v. Hawkins (1995) 10 Cal.4th 920, 958 [42 Cal.Rptr.2d 636, 897 P.2d 574]; People v. Burroughs (1984) 35 Cal.3d 824, 834, fn. 8 [201 Cal.Rptr. 319, 678 P.2d 894]; People v. Ray (1975) 14 Cal.3d 20, 28 [120 Cal.Rptr. 377, 533 P.2d 1017]; People v. Sedeno (1974) 10 Cal.3d 703, 720 [112 Cal.Rptr. 1, 518 P.2d 913]; People v. Forbs (1965) 62 Cal.2d 847, 852 [44 Cal.Rptr. 753, 402 P.2d 825]; People v. Gorshen (1959) 51 Cal.2d 716, 732-733 [336 P.2d 492]; People v. Bridgehouse (1956) 47 Cal.2d 406, 413 [303 P.2d 1018].) Relying on these cases, defendant argues that one who unintentionally kills in the exercise of unreasonable self-defense cannot be guilty of voluntary manslaughter because there is no intent to kill. Thus, he asserts, the only remaining possibility is that such persons are guilty of involuntary manslaughter.
In the companion case of People v. Lasko, supra, 23 Cal.4th 101, we pointed out that in each of these cases, the statement that voluntary manslaughter requires an intent to kill was mere dictum, and incorrect. As explained in Lasko, nothing in the language of subdivision (a) of section 192, which defines voluntary manslaughter, limits its applicability to cases in which the killer harbors an intent to kill. An unlawful homicide committed with malice is murder, whether or not the killer harbors the intent to kill; similarly, there is no valid reason to distinguish between those killings that, absent unreasonable self-defense, would be murder with express malice, and those killings that, absent unreasonable self-defense, would be murder with implied malice.
Defendant invokes the well-established principle of statutory construction that when the Legislature amends a statute without changing those portions of the statute that have previously been construed by the courts, the Legislature is presumed to have known of and to have acquiesced in the previous judicial construction. (People v. Escobar (1992) 3 Cal.4th 740, 750-751 [12 Cal.Rptr.2d 586, 837 P.2d 1100]; Harris v. Capital Growth Investors XIV (1991) 52 Cal.3d 1142, 1155-1156 [278 Cal.Rptr. 614, 805 P.2d 873]; Marina Point, Ltd. v. Wolfson (1982) 30 Cal.3d 721, 734 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161].) Defendant points out that between 1945 and 1994 the Legislature has amended section 192 (defining manslaughter) five times. He contends the Legislature’s failure to alter this court’s “consistent interpretation that voluntary manslaughter requires the intent to kill and involuntary manslaughter does not” shows the Legislature’s acquiescence in that interpretation.
*90 We disagree. All of the five amendments to section 192 affect only subdivision (c) of that section, which defines vehicular manslaughter. (See Stats. 1994, ch. 71, § 2; Stats. 1986, ch. 1106, § 3, p. 3881; Stats. 1984, ch. 742, § 1, p. 2703; Stats. 1983, ch. 937, § 1, p. 3387; Stats. 1945, ch. 1006, § 1, p. 1942.) The subdivisions of section 192 that define voluntary and involuntary manslaughter have remained unchanged since that section’s enactment in 1872. We do not view the Legislature’s amendments to subdivision (c), which defines vehicular manslaughter, as persuasive evidence that the Legislature intended to acquiesce in judicial decisions construing subdivision (a), which defines voluntary manslaughter. (See People v. Morante (1999) 20 Cal.4th 403, 429 [84 Cal.Rptr.2d 665, 975 P.2d 1071] [declining to infer legislative acquiescence in decision construing one portion of a penal statute from Legislature’s amendment of unrelated portion]; People v. Escobar, supra, 3 Cal.4th at pp. 750-751 [same].) Moreover, as we explain in the companion case of People v. Lasko, supra, 23 Cal.4th at page 110, in each of the decisions in question the observation that intent to kill is an element of voluntary manslaughter was dictum.
Defendant also relies on two decisions by the Court of Appeal, People v. Glenn (1991) 229 Cal.App.3d 1461 [280 Cal.Rptr. 609] and People v. Welch (1982) 137 Cal.App.3d 834 [187 Cal.Rptr. 511]. In Glenn, the defendant testified he intended to stab but not to kill the victim. In reversing the defendant’s conviction for voluntary manslaughter, because the trial court had failed to instruct the jury on the lesser included offense of involuntary manslaughter, the Court of Appeal stated: “A person who kills another in the honest but unreasonable belief in the necessity to defend against imminent peril to life or great bodily injury may be guilty of voluntary or involuntary manslaughter depending on the existence of an intent to kill.” (People v. Glenn, supra, 229 Cal.App.3d at p. 1467.)
Similarly, in Welch the defendant denied intending to kill the victim, who died of gunshot wounds. The Court of Appeal reversed the defendant’s conviction for voluntary manslaughter because of the trial court’s failure to instruct the jury on the lesser included offense of involuntary manslaughter. The Court of Appeal explained: “The basic distinction in California law between voluntary and involuntary manslaughter is that voluntary manslaughter requires an intent to kill whereas involuntary manslaughter does not. . . . [f] In the instant case there is substantial evidence from which a jury could conclude that the defendant did not intend to kill [the victim] when he discharged his weapon.” (People v. Welch, supra, 137 Cal.App.3d at pp. 839-840; see also People v. Dixon (1995) 32 Cal.App.4th 1547, 1557, fn. 5 [38 Cal.Rptr.2d 859] [“[I]mperfect self-defense could, depending on the existence of an intent to kill, result in a verdict of voluntary or *91 involuntary manslaughter.”]; People v. Ceja (1994) 26 Cal.App.4th 78, 86 [31 Cal.Rptr.2d 475] [“ ‘A person who kills another in the honest but unreasonable belief in the necessity to defend against imminent peril to life or great bodily injury may be guilty of voluntary or involuntary manslaughter depending on the existence of an intent to kill.’ ”].)
In neither People v. Glenn, supra, 229 Cal.App.3d 1461, nor People v. Welch, supra, 137 Cal.App.3d 834, did the Court of Appeal engage in any analysis or cite any authority in support of its conclusion that an unintentional killing in unreasonable self-defense can only be involuntary manslaughter. Thus, neither case is persuasive authority for the proposition that intent to kill is necessary for a voluntary manslaughter conviction. For the reasons given earlier, we conclude that when a defendant, acting with a conscious disregard for life, unintentionally kills in unreasonable self-defense, the killing is voluntary rather than involuntary manslaughter.
In his dissenting opinion in this case, Justice Mosk contends that a defendant who kills in unreasonable self-defense may sometimes be guilty of involuntary manslaughter. We have no quarrel with this view. We conclude only that a defendant who, with the intent to kill or with conscious disregard for life, unlawfully kills in unreasonable self-defense is guilty of voluntary manslaughter.
in
Does this holding apply retroactively to defendant’s case? At oral argument, the Attorney General acknowledged that retroactive application would be unconstitutional. He is right, as we explain.
“A statute '“which makes more burdensome the punishment for a crime, after its commission,” ’ violates article I, section 9, clause 3, of the United States Constitution as an ex post facto determination of criminal liability [citations], as well as its California counterpart, article I, section 9 of the state Constitution [citation]. Correspondingly, an unforseeable judicial enlargement of a criminal statute, applied retroactively, operates in the same manner as an ex post facto law.” (People v. Davis (1994) 7 Cal.4th 797, 811 [30 Cal.Rptr.2d 50, 872 P.2d 591]; see also People v. King (1993) 5 Cal.4th 59, 80 [19 Cal.Rptr.2d 233, 851 P.2d 27].) Courts violate constitutional due process guarantees (U.S. Const., 5th and 14th Amends.; Cal. Const., art. I, § 7) when they impose unexpected criminal penalties by construing existing laws in a manner that the accused could not have foreseen at the time of the alleged criminal conduct. (United States v. Lanier (1997) 520 U.S. 259, 266-267 [117 S.Ct. 1219, 1225-1226, 137 L.Ed.2d 432]; Marks v. United *92 States (1977) 430 U.S. 188, 191-192 [97 S.Ct. 990, 992-993, 51 L.Ed.2d 260]; Bouie v. City of Columbia (1964) 378 U.S. 347, 353 [84 S.Ct. 1697, 1702, 12 L.Ed.2d 894].)
Here, when defendant killed Vallo this court had not yet addressed the issue of whether an unintentional killing in unreasonable self-defense is voluntary or involuntary manslaughter. But three decisions by the Courts of Appeal in this state held that such a killing was only involuntary manslaughter (People v. Ceja, supra, 26 Cal.App,4th 78; People v. Glenn, supra, 229 Cal.App.3d 1461; People v. Welch, supra, 137 Cal.App.3d 834; see also People v. Clark (1982) 130 Cal.App.3d 371, 382 [181 Cal.Rptr. 682]); no case held to the contrary. Thus, our decision today—that one who, acting with conscious disregard for life, unintentionally kills in unreasonable self-defense is guilty of voluntary manslaughter rather than the less serious crime of involuntary manslaughter—is an unforeseeable judicial enlargement of the crime of voluntary manslaughter, and thus may not be applied retroactively to defendant. (See People v. Davis, supra, 7 Cal.4th at p. 812 [retroactive application improper when this court overturns consistent decisions by Courts of Appeal narrowly construing criminal statute].)
The Attorney General insists, however, that the trial court did not have to grant defendant’s request to instruct the jury that an unintentional killing in unreasonable self-defense was involuntary manslaughter. He points out that although the decisions of the Courts of Appeal, which defendant cited and which we mentioned in the preceding paragraph, hold that an unintentional killing in unreasonable self-defense may constitute involuntary manslaughter, none of them expressly holds that the trial court must, upon request, tailor its instruction on involuntary manslaughter to include mention of an unintentional killing in unreasonable self-defense. We disagree. The need for such a modification is implicit in the conclusion of the Court of Appeal decisions in question that such a killing is involuntary manslaughter. (See People v. Earp (1999) 20 Cal.4th 826, 886 [85 Cal.Rptr.2d 857, 978 P.2d 15] [“Upon request, a trial court must give jury instructions ‘that “pinpoint[] the theory of the defense ....”’ ”].)[4]
By contrast, the standard instruction on involuntary manslaughter the trial court gave here did not explain to the jury that a defendant who commits an unintentional killing in unreasonable self-defense is guilty of involuntary manslaughter. As we mentioned earlier, that instruction stated a killing is involuntary manslaughter if committed during “the commission of . . . the *93 offense of [bjrandishing a [wjeapon; or . . . [i]n the commission of an act, ordinarily lawful, which involves a high degree of risk of death or great bodily harm, without due caution and circumspection.” An unintentional killing in unreasonable self-defense, committed in the midst of a fight, does not fall within this definition. We therefore conclude the trial court erred by failing to instruct the jury that an unintentional killing in unreasonable self-defense is involuntary manslaughter.
IV
Did defendant suffer prejudice from the trial court’s failure to instruct the jury that an unintentional killing in unreasonable self-defense is involuntary manslaughter? A majority of this court recently held that when, as in this case, a trial court violates state law by failing to properly instruct the jury on a lesser included offense, the following test applies: “[I]n a noncapital case, error in failing sua sponte to instruct, or to instruct fully, on all lesser included offenses and theories thereof which are supported by the evidence must be reviewed for prejudice exclusively under [People v.] Watson [(1956) 46 Cal.2d 818, 836 [299 P.2d 243]]. A conviction of the charged offense may be reversed in consequence of this form of error only if, ‘after an examination of the entire cause, including the evidence’ (Cal. Const., art. VI, § 13), it appears ‘reasonably probable’ the defendant would have obtained a more favorable outcome had the error not occurred (Watson, supra, 46 Cal.2d 818, 836).” (People v. Breverman, supra, 19 Cal.4th 142, 178.)
Here, although the trial court did not instruct the jury that an unintentional killing in unreasonable self-defense is involuntary manslaughter, it did instruct on these two theories of involuntary manslaughter, neither of which requires an intent to kill: that an unlawful killing is involuntary manslaughter if it occurs during the offense of brandishing a weapon or in the commission of an ordinarily lawful act which involves a high degree of risk of death or great bodily harm, without due caution and circumspection. The court also gave CALJIC No. 8.40, the standard instruction defining the elements of voluntary manslaughter, which said that one of the elements of voluntary manslaughter that “must be proved” is that the killing “was done with the intent to kill.”[5] Thus, if the jury had concluded that defendant had unintentionally killed Vallo in unreasonable self-defense, it most likely *94 would not have convicted defendant of voluntary manslaughter, which, it was told, requires an intent to kill.
In their closing arguments to the jury, both the prosecutor and defense counsel told the jury that an unintentional killing in unreasonable self-defense was involuntary, not voluntary, manslaughter. The prosecutor said: “Then [the trial court] described to you a middle ground, which is sometimes called imperfect self-defense, but as presented to you was honest and reasonable, reasonable, self-defense. This is a situation where the killer thinks he’s in danger of death or great bodily injury, but he’s unreasonable in that. And that leads to the manslaughter alternative which is either voluntary if it’s an intentional killing or involuntary if it’s not.” (Italics added.) Defense counsel appeared to make the same point: “Did [defendant] have an intent to kill? That’s the difference between voluntary and involuntary manslaughter, and the answer there is you have to look at the timing of this and the intoxication of [defendant]. And I submit to you that there was no intent other than the intent to save his life.” (Italics added.)
People v. Watson, supra, 46 Cal.2d at page 836, requires a reasonable probability, not a mere theoretical possibility, that the instructional error affected the outcome of the trial. For the reasons given above, we do not find such a reasonable probability here.
Disposition
The judgment of the Court of Appeal is affirmed.
George, C. I., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.

Defendant’s requested instruction read: “Every person who unlawfully kills a human being without malice aforethought and without an intent to kill is guilty of the crime of involuntary manslaughter in violation of Penal Code § 192(b). [10 In order to prove such crime, each of the following elements must be proved: [IQ 1. A human being was killed; and [IQ 2. The killing was unlawful. [10 A killing is unlawful within the meaning of this instruction when the accused actually but unreasonably believes in the necessity to defend himself and, having such mental state, unintentionally causes the death of a human being.”

The court instructed the jury: “Every person who unlawfully kills a human being without malice aforethought and without an intent to kill is guilty of the crime of involuntary manslaughter in violation of Penal Code section 192(b). [fl] In order to prove such crime, each of the following elements must be proved: H 1. A human being was killed, and flO 2. The killing was unlawful. [H A killing is unlawful within the meaning of this instruction if it occurred: [H] 1. During the commission of a misdemeanor which is inherently dangerous to human life, namely, the offense of [b]randishing a [w]eapon; or HD 2. In the commission of an act, ordinarily lawful, which involves a high degree of risk of death or great bodily harm, without due caution and circumspection.”

All further statutory references are to the Penal Code.

We express no view as to whether the trial court would have been required, in the absence of a request from defendant, to instruct the jury that an unintentional killing in unreasonable self-defense is involuntary manslaughter.

As previously explained, in the companion case of People v. Lasko, supra, 23 Cal.4th 101, we hold that voluntary manslaughter does not require an intent to kill. Here, defendant does not contend the trial court erred by instructing the jury that intent to kill was required. That error could not have harmed defendant, because it increased the prosecution’s evidentiary burden to prove defendant guilty of voluntary manslaughter.