[No. B152162. Second Dist., Div. Seven. May 16, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
ARMAH VICTOR JOHNSON, Defendant and Appellant.

## COUNSEL

Bruce Daniel Rosen, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Robert F. Katz and Joseph P. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PERLUSS, J.—**

### INTRODUCTION

In *People v. Blakeley* (2000) 23 Cal.4th 82 [96 Cal.Rptr.2d 451, 999 P.2d 675] (*Blakeley*) and *People v. Lasko* (2000) 23 Cal.4th 101 [96 Cal.Rptr.2d 441, 999 P.2d 666] (*Lasko*), the California Supreme Court held that voluntary manslaughter does not require an intent to kill: Voluntary manslaughter

is also committed when one kills unlawfully and with conscious disregard for life, but lacks malice because of provocation or imperfect self-defense. (*Blakeley,* at pp. 90-91 [provocation]; *Lasko,* at pp. 108-110 [unreasonable self-defense]; see *People v. Rios* (2000) 23 Cal.4th 450, 461, fn. 7 [97 Cal.Rptr.2d 512, 2 P.3d 1066].)

Because *Lasko* does not "establish a new rule of law" but rather "gives 'effect to a statutory rule that the courts had theretofore misconstrued . . .' [citation]" (*People v. Crowe* (2001) 87 Cal.App.4th 86, 94-95 [104 Cal.Rptr.2d 319] (*Crowe*)), *Lasko* applies whether the alleged criminal conduct occurred before or after its June 2, 2000 date of decision. (*Ibid.*) Regardless of the date of the offense, it is error to instruct the jury that voluntary manslaughter requires a finding that " '[t]he killing was done with the intent to kill.' " (*Lasko, supra,* 23 Cal.4th at p. 111; *Crowe,* at p. 93.)

The precise holding in *Blakeley,* on the other hand—that one who, acting with conscious disregard for life, unintentionally kills in unreasonable self-defense is guilty of voluntary manslaughter rather than the less serious crime of involuntary manslaughter—constitutes an "unforeseeable judicial enlargement of the crime of voluntary manslaughter and thus may not be applied retroactively." (*Blakeley, supra,* 23 Cal.4th at p. 92.) "Courts violate constitutional due process guarantees [citations] when they impose unexpected criminal penalties by construing existing laws in a manner that the accused could not have foreseen at the time of the alleged criminal conduct. [Citations.]" (*Id.* at pp. 91-92.) For offenses occurring prior to June 2, 2000, therefore, it is error *not* to instruct that "an unintentional killing in unreasonable self-defense is involuntary manslaughter." (*Id.* at p. 93.)

The jury cannot be instructed that a defendant who kills unlawfully and with conscious disregard for life, but lacks malice because of imperfect self-defense, is guilty of *both* voluntary manslaughter and involuntary manslaughter with no element differentiating the two offenses. Accordingly, we hold that in cases involving alleged criminal conduct prior to June 2, 2000, notwithstanding *Lasko,* the jury must be instructed in accordance with *Blakeley* that an unintentional killing in unreasonable self-defense is involuntary manslaughter, not voluntary manslaughter.

### FACTUAL AND PROCEDURAL BACKGROUND

A jury convicted Armah Victor Johnson of second degree murder (Pen. Code, §§ 187, 189)[1] and being a felon in possession of a firearm (§ 12021,

---

[1]All further statutory references are to the Penal Code.

subd. (a)(1)). The jury found true sentencing enhancement allegations that, in the commission of the murder, Johnson personally and intentionally discharged a handgun causing death (§ 12022.53, subd. (d)) and personally used a firearm (§§ 12022.5, subd. (a), 12022.53, subd. (b)). The trial court sentenced Johnson to two consecutive life terms with a minimum aggregate term of 40 years.[2]

*The evidence at trial.*

Johnson admitted shooting Charles Conway on May 17, 2000. His defense at trial was that he killed Conway in self-defense or that he did so based on an actual but unreasonable belief in the necessity to defend himself against imminent peril to life or great bodily injury.

While driving on Lincoln Boulevard toward the Santa Monica Freeway with his wife in the late afternoon of May 17, 2000, Johnson saw an acquaintance, Conway, flag him down. Johnson pulled into the parking lot of a retail establishment and got out of his car. According to Johnson, as he approached Conway, Conway accused Johnson of having an affair with his wife and threatened to kill him. Johnson returned to his car, rolled up the windows and locked the door. The car initially stalled, but Johnson managed to start it and drive out of the lot and back to Lincoln Boulevard.

Johnson's car then abruptly stopped near the Olympic Boulevard on-ramp to the Santa Monica Freeway. Conway approached the car, "jogging" up to it from the passenger side. Johnson raised a gun, his wife leaned forward and Johnson fired two or three shots out the window at Conway, who was about three feet away. Johnson then drove away from the scene at a high rate of speed.

It appeared to one witness that Conway was trying to turn away or run away when he was shot. Based on the path of the fatal bullet, the coroner opined that Conway's back was turned from the person who shot him and that he was either crouching down or possibly ducking at the time he was shot.

---

[2]The trial court sentenced Johnson to 15 years to life for second degree murder and an additional 25 years to life for the firearm use enhancement pursuant to section 12022.53, subdivision (d). Sentences for the two further gun use enhancements were imposed and then stayed. (See Cal. Rules of Court, rule 4.447.) Johnson also received a concurrent prison term of two years for the felon-in-possession conviction. Both the abstract of judgment and the court's minute order from the sentencing hearing incorrectly reflect the firearm use enhancement as imposed pursuant to section 12022.53, subdivision (c) rather than subdivision (d). Both the minute order and abstract of judgment are ordered corrected to refer to section 12022.53, subdivision (d).

The police found the handgun used to kill Conway hidden beneath a baseboard underneath a bathroom sink in Johnson's apartment. The gun, which holds six rounds, had four live rounds and two expended rounds in its cylinder when discovered by the police.

Testifying on his own behalf, Johnson claimed that his car had stalled again near the Olympic Boulevard freeway on-ramp and Conway appeared "out of nowhere" and began beating on the passenger window. Conway then attempted to enter the car through a rear door. At this point Johnson grabbed his wife, leaned over the seat, and shot Conway one time. Johnson testified he was afraid at the time he shot Conway. Johnson acknowledged he initially told the police his wife had shot Conway.

*The trial court's instructions.*

The People sought to convict Johnson of first degree murder. The trial court instructed the jury on the elements of first and second degree murder. Because Johnson asserted he shot Conway out of fear and in self-defense, the jury was also instructed on voluntary and involuntary manslaughter based on an imperfect self-defense theory and on self-defense.

As to second degree murder, the jury was properly instructed pursuant to CALJIC No. 8.30[3] and No. 8.31.[4] The jury was also instructed that "[t]he crime of manslaughter is lesser to that of murder charged in Count 1," and directed to "determine whether the defendant is guilty or not guilty of the crime charged in Count 1 or of any lesser crime."

The jury was instructed that "[t]he crime of manslaughter is the unlawful killing of a human being without malice aforethought. It is not divided into degrees, but is of two kinds. Namely, voluntary manslaughter and involuntary manslaughter." (See CALJIC No. 8.37.) Voluntary manslaughter was defined in the language of former CALJIC No. 8.40 (6th ed. 1996), "Every person who unlawfully kills another human being without malice aforethought, but with an intent to kill, is guilty of voluntary manslaughter in

---

[3]The jury was instructed, "Murder of the second degree is the unlawful killing of a human being with malice aforethought when the perpetrator intended unlawfully to kill a human being, but the evidence is insufficient to prove deliberation and premeditation."

[4]The jury was instructed, "Murder of the second degree is also the unlawful killing of a human being when [¶] One, the killing resulted from an intentional act; [¶] Two, the consequence of the act was dangerous to human life; and [¶] Three, the act was deliberately performed with knowledge of the danger to and with conscious disregard for, human life. [¶] When the killing is the direct result of such an act, it is not necessary to prove that the defendant intended that the act would result in the death of a human being."

violation of Penal Code Section 192(a). [¶] There is no malice aforethought if the killing occurred in the actual, but unreasonable belief in the necessity to defend oneself against imminent peril to life or great bodily injury. [¶] In order to prove this crime, each of the following elements must be proved: [¶] One, a human being was killed; [¶] Two, the killing was unlawful; and [¶] Three, the killing was done with the intent to kill. [¶] The killing is unlawful if it was neither justifiable nor excusable."

Involuntary manslaughter was defined as requested by Johnson's counsel in an instruction modifying former CALJIC No. 8.45 (6th ed. 1996) to include an unintentional killing in unreasonable self-defense: "Every person who kills [sic[5]] a human being without malice aforethought and without an intent to kill is guilty of the crime of involuntary manslaughter in violation of Penal Code Section 192(b). [¶] A killing is unlawful, within the meaning of this instruction, if the person who kills does so in the actual, but unreasonable belief in the necessity to defend himself against imminent peril to life or great bodily injury. [¶] In order to prove this crime, each of the following elements must be proved: [¶] A human being was killed, and the killing was unlawful."[6]

In discussing the proposed instructions with counsel, the trial court noted the Supreme Court's decision in *Lasko* and the recent revision to CALJIC No. 8.40 (2001 rev.) (6th ed. 1996),[7] which now specifies either an intent to kill or conscious disregard for human life as an element of voluntary manslaughter. However, in conformity with the Use Note to CALJIC No. 8.40 (2001 rev.) *supra*, at page 127 which states that the revised

---

[5]The written instruction as requested by defense counsel and approved by the trial court states: "Every person who unlawfully kills . . . ." As transcribed, while reading the instruction to the jury, the trial judge inadvertently omitted the word "unlawfully."

[6]The People objected to the court instructing on involuntary manslaughter.

[7]CALJIC No. 8.40 *supra*, provides: "[Defendant is accused [in Count[s]] of having committed the crime of voluntary manslaughter, a violation of section 192, subdivision (a) of Penal Code.] [¶] Every person who unlawfully kills another human being [without malice aforethought but] either with an intent to kill, or in conscious disregard for human life, is guilty of voluntary manslaughter in violation of Penal Code section 192, subdivision (a). [¶] [There is no malice aforethought if the killing occurred [upon a sudden quarrel or heat of passion] [or] [in the actual but unreasonable belief in the necessity to defend oneself against imminent peril to life or great bodily injury].] [¶] 'Conscious disregard for life,' as used in this instruction, means that a killing results from the doing of an intentional act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his or her conduct endangers the life of another and who acts with conscious disregard for life. [¶] In order to prove this crime, each of the following elements must be proved: [¶] 1. A human being was killed; [¶] 2. The killing was unlawful; and [¶] 3. The perpetrator of the killing either intended to kill the alleged victim, or acted in conscious disregard for life; and [¶] 4. The perpetrator's conduct resulted in the unlawful killing. [¶] [A killing is unlawful, if it was [neither] [not] [justifiable] [nor] [excusable].]"

instruction "should not be given in murder or voluntary manslaughter prosecutions when the crime preceded *People v. Blakeley*[, *supra*,] 23 Cal.4th 82 [June 2, 2000]," the court concluded it should instruct on the basis of the law as it existed prior to *Lasko* and *Blakeley*, that is to "require that for voluntary manslaughter there must be an intent to . . . kill." The court explained that instructing in this manner benefited the defendant: "[I]f the jury is not convinced beyond a reasonable doubt, and they pass on to manslaughter, in order to convict him of voluntary manslaughter, they must find beyond a reasonable doubt that he had the intent to kill. And if they don't find him guilty of murder, and they don't find he had an intent to kill, even though his actions may have been and without due caution and circumspection and so forth it would be involuntary manslaughter."

*The jury's questions on intent.*

The jury received the case and began deliberations at 2:13 p.m. on Friday, May 18, 2001. Before being excused for the weekend at 4:15 p.m., the jury sent the court the following question: "What is the legal definition of 'intent to kill'?" On Monday morning, with counsel present, the court asked the foreperson, "Can you indicate to the—me what aspect of that is giving the jury a problem? Is it the word 'intent'? The word 'killed'?" The foreperson answered, "The whole phrase, but principally the word 'intent' I think was the basis of our discussion. . . . What does intent mean with respect to this particular case, the definition?" The court responded, "It's not a legal word in that sense, sir. It's the word that's used in everyday English. What is someone's intent, meaning what is their purpose." There followed an extended dialogue between the foreperson and the court, in which three other jurors also participated, regarding intent, malice, premeditation and direct and circumstantial evidence. The court concluded the discussion by rereading CALJIC No. 8.20 defining first degree murder and by reminding the jurors that "all of the instructions were to be considered as a whole and each in the light of all the others." The court then asked the jurors if they wanted to hear further argument from counsel on the issues raised by their questions. The response was "No. For sure."

After further deliberations, the jury acquitted Johnson of the charge of first degree murder and convicted him of second degree murder. The jury also found Johnson guilty of being a felon in possession of a firearm and found true all the firearm sentencing enhancements.

## CONTENTIONS

Johnson contends (a) the trial court erred when it failed to instruct the jury that voluntary manslaughter does not require an intent to kill, and (b) the

error was prejudicial as shown by both the jury's questions regarding intent and its ultimate verdict finding Johnson guilty of second degree murder, which must be based on a finding that Johnson acted with implied malice and without intent to kill.

## DISCUSSION

1. *The Supreme Court's Decisions in Lasko and Blakeley.*

In *Lasko*, *supra*, 23 Cal.4th 101, the Supreme Court reviewed existing case law holding that "a person who *intentionally* kills as a result of provocation, that is, 'upon a sudden quarrel or heat of passion,' lacks malice and is guilty not of murder but of the lesser offense of voluntary manslaughter" (*id.* at p. 108, discussing *People v. Breverman* (1998) 19 Cal.4th 142, 163 [77 Cal.Rptr.2d 870, 960 P.2d 1094]), and then addressed the question, "what offense is committed when a person, acting with a conscious disregard for life, *unintentionally* kills a human being, but the killing occurs during a sudden quarrel or in the heat of passion?" (*Lasko*, at p. 108.) Rejecting the Attorney General's contention that the crime is murder, the court held that "[t]his cannot be, and is not, the law." (*Id.* at p. 109.) "The statutory provision defining voluntary manslaughter contains no requirement of intent to kill. Section 192 describes manslaughter as 'the unlawful killing of a human being without malice' and states that there are three types of manslaughter. Subdivision (a) of this section defines voluntary manslaughter as occurring 'upon a sudden quarrel or heat of passion.' Nothing is said about an intent to kill." (*Id.* at p. 108.)

In *Blakeley*, *supra*, 23 Cal.4th 82, the companion case to *Lasko*, the Supreme Court asked a similar question as it applied to a defendant who kills in unreasonable self-defense: "A person who *intentionally* kills in unreasonable self-defense lacks malice and is guilty only of voluntary manslaughter, not murder. [Citations.] But what offense is committed when a person, acting with a conscious disregard for life, *unintentionally* kills a human being, but the killing occurs in unreasonable self-defense? Is the killer guilty of murder, voluntary manslaughter, or involuntary manslaughter?" (*Id.* at p. 88.) The Supreme Court reaffirmed its prior ruling that in these circumstances the killer is not guilty of murder (*In re Christian S.* (1994) 7 Cal.4th 768, 780, fn. 4 [30 Cal.Rptr.2d 33, 872 P.2d 574]), before addressing a question not previously considered by the Supreme Court itself (although the subject of several Court of Appeal decisions, including

two from our court),[8] "whether in these circumstances a defendant is guilty of voluntary or involuntary manslaughter." (*Blakeley*, at p. 88.)[9]

Relying on the analysis at the core of *Lasko*, the Supreme Court concluded that a defendant who, with the intent to kill or with conscious disregard for life, unlawfully kills in unreasonable self-defense is guilty of voluntary manslaughter. (*Blakeley, supra*, 23 Cal.4th at p. 91.) "As explained in *Lasko*, nothing in the language of subdivision (a) of section 192, which defines voluntary manslaughter, limits its applicability to cases in which the killer harbors an intent to kill. An unlawful homicide committed with malice is murder, whether or not the killer harbors the intent to kill; similarly, there is no valid reason to distinguish between those killings that, absent unreasonable self-defense, would be murder with express malice, and those killings that, absent unreasonable self-defense, would be murder with implied malice." (*Id.* at p. 89.)[10]

The *Lasko* court applied its holding to the appellant before it. However, after concluding it was error to instruct the jury that voluntary manslaughter requires a finding the killing was done with an intent to kill, the court found that the error did not prejudice the appellant. (*Lasko, supra*, 23 Cal.4th at p. 111.) The Supreme Court did not provide any further guidance with respect to retroactive application of its ruling.

In *Crowe, supra*, 87 Cal.App.4th 86, Division Four of our court resolved the issue of retroactivity. *Crowe* held *Lasko* applies in all cases not yet final as of the date of that decision (that is, whether or not the offense preceded the *Lasko* decision) because the Supreme Court did not establish a new rule of law but had simply given effect to a statutory rule that the courts had previously misconstrued: "*People v. Lasko, supra*, 23 Cal.4th 101, did not 'redefine' the crime of voluntary manslaughter. Instead, it simply acknowledged the exact words contained in the crime's statutory definition and gave effect to the fact that the Legislature had not included intent to kill in that definition, although previous decisions had not given proper recognition to that omission. . . . In other words, this defendant, as well as all other

---

[8] *People v. Ceja* (1994) 26 Cal.App.4th 78, 86 [31 Cal.Rptr.2d 475]; *People v. Glenn* (1991) 229 Cal.App.3d 1461, 1467 [280 Cal.Rptr. 609]; see *People v. Welch* (1982) 137 Cal.App.3d 834, 839-840 [187 Cal.Rptr. 511].

[9] The Supreme Court had noted in *Lasko* that the defendant did not contend an unintentional killing in the heat of passion was involuntary rather than voluntary manslaughter. (*Lasko, supra*, 23 Cal.4th at p. 110, fn. 3.)

[10] The Supreme Court acknowledged that a defendant who kills in unreasonable self-defense may sometimes be guilty of involuntary manslaughter, but not if the killing took place with conscious disregard for life. (*Blakeley, supra*, 23 Cal.4th at p. 91; see also *Blakeley*, at pp. 94-100 (dis. opn. of Mosk, J.).)

defendants whose cases are not yet final, may rely upon *People v. Lasko*'s holding to claim prejudicial error occurred." (*Crowe, supra,* 87 Cal.App.4th at p. 95.) Nothing in *Crowe* suggests the "retroactivity" of the *Lasko* definition of voluntary manslaughter is limited to cases in which the defense is predicated on a claim of heat of passion or sudden quarrel rather than imperfect self-defense.[11]

In *Blakeley,* unlike *Lasko,* the Supreme Court specifically addressed the issue of retroactivity and held its decision may not be applied either to the defendant before it or to others whose offense occurred prior to the June 2, 2000 date of decision: "[O]ur decision today—that one who, acting with conscious disregard for life, unintentionally kills in unreasonable self-defense is guilty of voluntary manslaughter rather than the less serious crime of involuntary manslaughter—is an unforeseen judicial enlargement of the crime of voluntary manslaughter, and thus may not be applied retroactively to defendant. [Citation.]" (*Blakeley, supra,* 23 Cal.3d at p. 92.)

### 2. The Trial Court Properly Instructed the Jury on Voluntary Manslaughter and Involuntary Manslaughter.

 Johnson's sole contention on appeal is that the trial court committed reversible error when it failed to follow *Lasko, supra,* 23 Cal.4th 101, and instead instructed the jury that intent to kill is an element of voluntary manslaughter. The People agree with Johnson that the instructions given by the trial court "were technically 'incorrect' under *Lasko,*" but argue that the error was waived or invited and, in any event, harmless. We disagree with both Johnson and the People that any instructional error occurred. Consistent with *Blakeley, supra,* 23 Cal.4th 82, as applied to alleged criminal conduct occurring prior to June 2, 2000, the trial court properly instructed the jury that an unintentional killing in unreasonable self-defense is involuntary manslaughter.

Following the decisions in *Lasko* and *Blakeley,* former CALJIC No. 8.40 was revised to include as a required element of the crime of voluntary manslaughter proof that "the perpetrator of the killing either intended to kill the alleged victim, or acted in conscious disregard for life." (CALJIC No. 8.40 (2001 rev.).) As discussed above, however, the trial court declined to instruct the jury with the revised version of the definition of voluntary manslaughter, relying on the Use Note to CALJIC No. 8.40 (2001 rev.) at

---

[11]In *Crowe, supra,* 87 Cal.App.4th 86, 92, the defendant claimed he shot the victim in the heat of passion *and* because he feared for his life.

page 127 which states the revised instruction should not be given in murder or voluntary manslaughter prosecutions when the crime preceded *Blakeley*.[12]

The trial court properly reconciled the seemingly conflicting commands of *Blakeley*, on the one hand, and *Lasko* and *Crowe*, on the other hand, regarding retroactivity. Regardless of the date of the offense, it is error to instruct the jury that voluntary manslaughter requires a finding that "the killing was done with the intent to kill" if the defendant claims the killing was done in the heat of passion or a sudden quarrel. (*Lasko, supra,* 23 Cal.4th at p. 111; *Crowe, supra,* 87 Cal.App.4th at p. 93.) If the defendant asserts the killing was done in an honest but mistaken belief in the need to act in self-defense, however, and the offense occurred prior to June 2, 2000, the jury must be instructed that unintentional killing in unreasonable self-defense is involuntary manslaughter. (*Blakeley, supra,* 23 Cal.4th at p. 93.) ▮▮▮▮▮ Under these circumstances the *Lasko* instruction as to the definition of voluntary manslaughter cannot be given: Simply put, the constitutionally mandated rule of nonretroactivity of *Blakeley* overrides the general applicability of the *Lasko* definition of voluntary manslaughter recognized in *Crowe*.[13] Any other conclusion would create the intolerable situation in which a defendant who kills unlawfully and with conscious disregard for life, but lacks malice because of imperfect self-defense, could be found guilty of both voluntary manslaughter and involuntary manslaughter—offenses with significantly different penalties[14] —with no element differentiating the two crimes. (Cf. *People v. Gilbert* (1969) 1 Cal.3d 475, 480-481 [82 Cal.Rptr. 724, 462 P.2d 580] [in the face of dual applicability of overlapping general and special statutes carrying conflicting penalties, prosecution under general provision with more severe penalty is prohibited].)

---

[12]The Use Note explains, "Retroactive application would be unconstitutional." (Use Note to CALJIC No. 8.40 (2001 rev.) at p. 127.) Without any acknowledgement of the apparent contradiction, the Use Note also states, "[I]n *People v. Crowe*[, *supra,*] 87 Cal.App.4th 86, 95, it was held that *People v. Lasko, supra,* 23 Cal.4th 101, did not establish a new rule of law and should be applied retroactively." (*Ibid.*)

[13]As previously noted, in *Crowe, supra,* 87 Cal.App.4th 86, the defendant claimed he shot the victim in the heat of passion and because he feared for his life. (*Id.* at p. 92.) To the extent *Crowe's* holding as to *Lasko's* full retroactivity was intended to apply to the defendant's imperfect self-defense theory, we respectfully disagree with our colleagues' conclusion. Rather, when faced, as was the trial court in *Crowe*, with both heat of passion and imperfect self-defense theories for a pre-*Blakeley* offense, the jury should be separately instructed as to each theory. If the jury finds the killing was done in the heat of passion or a sudden quarrel, the defendant is guilty of voluntary manslaughter whether the defendant had the intent to kill or acted in conscious disregard for life. If the jury finds the killing was done in the actual but unreasonable belief that it was necessary to defend against imminent peril to life or great bodily injury, the defendant is guilty of voluntary manslaughter if he or she acted with the intent to kill, but guilty only of involuntary manslaughter if the killing was unintentional but in conscious disregard for life.

[14]Voluntary manslaughter is punishable by imprisonment in the state prison for three, six or 11 years (§ 193, subd. (a)); involuntary manslaughter by imprisonment in the state prison for two, three or four years (§ 193, subd. (b)).

### 3. *The Trial Court's Instructions Did Not Deny Johnson His Right to Fair Consideration of the Imperfect Self-defense Theory.*

■ The trial court's instructions properly told the jury that a killing in unreasonable self-defense is not murder, whether the killing was intentional or unintentional. The jury was also correctly instructed in the circumstances of this case that an unintentional killing by Johnson "in the actual, but unreasonable belief in the necessity to defend himself against imminent peril to life or great bodily injury" was involuntary manslaughter. In finding Johnson guilty of second degree murder rather than voluntary or involuntary manslaughter, the jury necessarily concluded he did not act in unreasonable self-defense. (See *Lasko, supra*, 23 Cal.4th at p. 114; *People v. Sedeno* (1974) 10 Cal.3d 703, 721 [112 Cal.Rptr. 1, 518 P.2d 913], overruled on another ground in *People v. Breverman, supra,* 19 Cal.4th 142.) Accordingly, notwithstanding the jury's need for further instructions on the issue of intent, Johnson could not have been prejudiced by whatever lack of clarity might have resulted from the trial court's initial instructions.

### DISPOSITION

The abstract of judgment and minute order of June 21, 2001 are ordered corrected to refer to imposition of the firearm use enhancement of 25 years to life pursuant to section 12022.53, subdivision (d). In all other respects the judgment is affirmed.

Johnson, Acting P. J., and Woods, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 24, 2002. Werdegar, J., and Brown, J., did not participate therein.