Filed 7/1/25  P. v. Maura CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>ROLANDO ALEXANDER MAURA,<br><br>　　　Defendant and Appellant. | B333734<br><br>(Los Angeles County<br>Super. Ct.<br>No. BA503823) |

　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Ronald S. Coen, Judge.  Affirmed.

　　　Carlo Andreani, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In an information filed by the Los Angeles County District Attorney's Office, defendant and appellant Rolando Alexander Maura was charged with murder (Pen. Code, § 187, subd. (a); count 1)[1] and hit and run driving resulting in injury to another person (Veh. Code, § 20001, subd. (b)(1); count 3).[2] As to count 1, it was alleged that defendant personally used a deadly and dangerous weapon, a knife. (§ 12022, subd. (b)(1).)

A jury found defendant guilty of voluntary manslaughter (§ 192, subd. (a))—a lesser included offense of count 1—and found true the allegation he personally used a knife. The jury also found defendant guilty of hit and run driving as charged in count 3. In a bifurcated proceeding, the trial court found true the aggravating factor that defendant had served a prior prison term. (Cal. Rules of Court, rule 4.421(b)(3).) The court sentenced defendant to serve an aggregate term of 12 years eight months in state prison.

In this timely appeal, defendant only attacks his conviction for voluntary manslaughter. He contends that (1) the trial court erroneously instructed the jury on mutual combat, and (2) the court erred in failing to instruct, sua sponte, on the lesser included offense of involuntary manslaughter.

We affirm.

## BACKGROUND

I. *The People's Evidence*

On March 11, 2022, at about 2:50 a.m., a Kia Soul drove through a red light at the intersection of La Brea and

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] There was no count 2.

2

Washington Boulevard and collided with a Mercedes Benz occupied by Jonah Rousseau (Rousseau) and Anthony Lanford (Lanford).  Rousseau and Lanford did not see the driver of the Kia.  As a result of the collision, Rousseau experienced some neck and back pain.  Lanford suffered back pain, leg injuries, and scratches.

Tyler Clark (Clark) witnessed the collision.  Clark identified defendant as the driver of the Kia.  Following the crash, defendant exited the vehicle and ran.

Seth Jones (Jones) also saw defendant flee from the scene of the collision.  Defendant ran past Jones, looked at him, and pulled out a knife.  Jones saw Justin Dumas (Dumas) chase defendant.  Jones told Dumas, "'He has a knife.'"  Dumas, who was wearing earbuds, continued running after defendant and eventually caught up with him.

According to Jones, defendant and Dumas "squared off and started fighting."  "It was an automatic fight," but Jones was unable to identify "who threw the first punch."  Jones answered in the affirmative when asked if defendant and Dumas engaged in "a mutual combat thing[.]"  Within about a minute, defendant made a stabbing or fighting motion and Dumas fell.  Defendant ran away.

At about 2:52 a.m., Tiffany Washington (Washington), Dumas's mother, was talking to her son on the phone.  Washington heard screeching in the background and asked what happened.  Dumas said there was a car accident and that he had almost been hit.  After about two minutes, Washington heard Dumas say, "'Stupid idiot.'"  She next heard scuffling and, later, Dumas say, "'Oh, motherf***er[.]'"  About 30 seconds later,

3

Washington heard a sound "[l]ike . . . when you drop something and it goes clack."

At about 3:00 a.m., Pamela Woodard (Woodard) was awakened by loud banging on the window of her first-floor apartment. The window shattered, and a man tried to enter. Woodard pushed him back through the window; in the process, she sustained cuts to her wrist and palm. The man ran away.

Los Angeles Police Department Officer Kenneth Rodriguez responded to the area of Longwood and Washington Boulevard at around 3:00 a.m. Officer Rodriguez heard yelling and saw defendant approach crime scene tape. Defendant threw a knife on the ground and raised his hands. The blade of the knife was about an inch and a half long and had blood on it.

Dumas was transported by ambulance to a hospital, where he was pronounced dead. He died from a stab wound to the chest. Dumas also had a sharp force injury on his forearm, which was consistent with a defensive wound.

II. *Defendant's Evidence*

Defendant testified on his own behalf.

On March 10, 2022, after leaving "an informal gambling spot[,]" defendant began to fear that several cars were following him. After driving around for two to three hours, defendant crashed the car at the intersection of Washington Boulevard and La Brea.

After the collision, defendant exited his car and ran while holding a knife. He did not want to be caught by the people who were following him. Defendant was "ready for combat, because [he] ha[d] to defend [him]self."

Defendant testified: "I seen somebody running, really, but I don't know that I [*sic*] was running after me. But when he got

4

close to me, he said something to me, and that's when I feel that he was after me. Then he turned to come to me, I did this. Then he grabbed into me, and suddenly something dropped on the floor. . . . I thought he had something, like a knife or something." Defendant swung his knife once at the man. Defendant "just want[ed] to stop the chase"; he did not want to kill the man.

## DISCUSSION

Defendant raises two claims of instructional error, which we review de novo. (*People v. Frazier* (2024) 16 Cal.5th 814, 839; *People v. Waidla* (2000) 22 Cal.4th 690, 733.)

### I. *Mutual Combat Instruction*

Defendant argues that the evidence was insufficient to show that the combat between him and Dumas was "pursuant to mutual intention, consent, or agreement preceding the initiation of hostilities"; therefore, the trial court erroneously instructed the jury on mutual combat.

### A. Additional background

The trial court instructed the jury with CALJIC No. 5.56 regarding mutual combat, as follows:

"The right of self-defense is only available to a person who engages in mutual combat: [¶] 1. If he has done all of the following: [¶] A. He has actually tried, in good faith, to refuse to continue fighting; [¶] B. He has by words or conduct caused his opponent to be aware, as a reasonable person, that he wants to stop fighting; and [¶] C. He has caused by words or conduct his opponent to be aware, as a reasonable person, that he has stopped fighting; and [¶] D. He has given his opponent the opportunity to stop fighting.

"After he has done these four things, he has the right to self-defense if his opponent continues to fight[, ] or

5

"2. If the other party to the mutual combat responds in a sudden and deadly counterassault, that is, force that is excessive under the circumstance, the party victimized by the sudden excessive force need not attempt to withdraw and may use reasonably necessary force in self-defense.

"Mutual combat consists of fighting by mutual intention, agreement, or consent. It follows an express or implied agreement to fight. However before mutual combat can be found to exist, you must find that both combatants actually intended, agreed, or consented to fight before the claimed occasion for self-defense arose. The agreement need not have all the characteristics of a legally binding contract."

Defendant did not object to the instruction on mutual combat.[3]

The trial court further instructed the jury to "[d]isregard any instruction which applies to facts determined by you not to exist."

B. Relevant law

In the self-defense context, "'mutual combat' means not merely a reciprocal exchange of blows but one pursuant to mutual intention, consent, or agreement preceding the initiation of hostilities." (*People v. Ross* (2007) 155 Cal.App.4th 1033, 1045 (*Ross*), italics omitted.) "In other words, it is not merely the *combat*, but the *preexisting intention to engage in it*, that must be mutual." (*Ibid.*) To justify a mutual combat instruction, "there must be evidence from which the jury could reasonably find that both combatants actually consented or intended to fight before

---

[3] Despite his failure to object below, defendant's "claim is cognizable on appeal to the extent it implicates his substantial rights. [Citations.]" (*People v. Carey* (2007) 41 Cal.4th 109, 129.)

the claimed occasion for self-defense arose." (*Id.* at p. 1047, italics omitted.)

Even if a jury instruction correctly states the law, it is error to give it if it is irrelevant or inapplicable to the facts of the case. (*People v. Cross* (2008) 45 Cal.4th 58, 67; *People v. Guiton* (1993) 4 Cal.4th 1116, 1129.)  Thus, "instructions *not* supported by substantial evidence should not be given.  [Citation.]" (*Ross*, *supra*, 155 Cal.App.4th at p. 1050; see also *People v. Cole* (2004) 33 Cal.4th 1158, 1206 (*Cole*) [substantial evidence is "evidence that would allow a reasonable jury to make a determination in accordance with the theory presented under the proper standard of proof"].)

C. <u>Analysis</u>

After a night of gambling, defendant feared he was being followed.  Defendant subsequently crashed the car he was driving into another vehicle.  In the process, he almost hit Dumas.  When defendant fled the scene on foot, Dumas chased him.  Despite being warned by a bystander that defendant had a knife, Dumas continued running after defendant.  Defendant testified that he did not want to be caught by the people following him and that he was "ready for combat, because [he] ha[d] to defend [him]self." Dumas eventually caught up with defendant and, according to Jones, the men "squared off and started fighting."  Jones described it as "an automatic fight" and agreed with the characterization of the altercation as "a mutual combat thing[.]"

The jury could reasonably infer from this evidence that defendant and Dumas impliedly intended, consented, or agreed to engage in combat prior to the initiation of hostilities.  (See *Ross*, *supra*, 155 Cal.App.4th at p. 1036 ["'mutual combat' for purposes of the law of self-defense" is "a violent confrontation conducted

7

pursuant to prearrangement, mutual consent, or an express or implied agreement to fight"]; see also *In re White* (2018) 21 Cal.App.5th 18, 30, affd. (2020) 9 Cal.5th 455 [substantial evidence may consist of inferences if they are the product of logic and reason and rest on the evidence].)

Accordingly, the trial court did not err by instructing the jurors on mutual combat. (See *Cole*, *supra*, 33 Cal.4th at p. 1206 ["A trial court must instruct the jury on every theory that is supported by substantial evidence"].)[4]

II. *Failure to Instruct on Involuntary Manslaughter*

Defendant also contends that the trial court erred in failing to instruct the jury, sua sponte, on the lesser included offense of involuntary manslaughter.

A. Relevant law

A trial court must instruct on a lesser included offense when there is substantial evidence that the defendant is guilty only of the lesser offense. (*People v. Vargas* (2020) 9 Cal.5th 793, 827.) "The 'substantial evidence requirement is not satisfied by '"*any* evidence . . . no matter how weak,"' but rather by evidence from which a jury . . . could conclude "that the lesser offense, but not the greater, was committed."' [Citation.]" (*People v. Nelson* (2016) 1 Cal.5th 513, 538.) "Speculative, minimal, or insubstantial evidence is insufficient to require an instruction on a lesser included offense. [Citations.]" (*People v. Simon* (2016) 1 Cal.5th 98, 132.)

Involuntary manslaughter is a lesser included offense of murder. (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1145.)

---

[4] Because we find that the trial court did not err, we need not address the parties' arguments regarding whether any error was harmless.

8

Involuntary manslaughter is "the unlawful killing of a human being without malice" during "the commission of an unlawful act, not amounting to [a] felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection . . . ." (§ 192, subd. (b); see also *People v. Rangel* (2016) 62 Cal.4th 1192, 1227.)

"[W]hen the evidence presents a material issue as to whether a killing was committed with malice, the court has a sua sponte duty to instruct on involuntary manslaughter as a lesser included offense, even when the killing occurs during the commission of an aggravated assault. [Citations.] However, when . . . the defendant indisputably has deliberately engaged in a type of aggravated assault the natural consequences of which are dangerous to human life, thus satisfying the objective component of implied malice as a matter of law, and no material issue is presented as to whether the defendant subjectively appreciated the danger to human life his or her conduct posed, there is no sua sponte duty to instruct on involuntary manslaughter. [Citations.]" (*People v. Brothers* (2015) 236 Cal.App.4th 24, 35 (*Brothers*).)

    B. <u>Analysis</u>

The trial court had no sua sponte duty to instruct the jury on the lesser included offense of involuntary manslaughter and, therefore, did not err.

"[T]here was simply no evidence from which a reasonable juror could entertain a reasonable doubt that [defendant] had acted in conscious disregard of the risk h[is] conduct posed to [the victim]'s life." (*Brothers*, *supra*, 236 Cal.App.4th at p. 34.) Rather, defendant fled the scene of the crash, holding a knife and "ready for combat[.]" When Dumas caught up with defendant

and said something, defendant "fe[lt] that [Dumas] was after [him]" and had "a knife or something." Defendant admitted that he intentionally swung his knife at Dumas. This resulted in a fatal stab wound to Dumas's chest, a vital area of his body. Crediting defendant's testimony that he did not want to kill Dumas and did not aim for a specific part of Dumas's body, the evidence still only supports the conclusion that defendant acted with conscious disregard for human life. (See *People v. Blakeley* (2000) 23 Cal.4th 82, 88–89 (*Blakeley*) ["when a defendant, acting with conscious disregard for life, unintentionally kills in unreasonable self-defense, the killing is voluntary, not involuntary, manslaughter"].)[5]

We are unpersuaded by defendant's reliance on *People v. Glenn* (1991) 229 Cal.App.3d 1461 (*Glenn*), abrogated in part by *Blakeley*, *supra*, 23 Cal.4th 82, and *People v. Welch* (1982) 137 Cal.App.3d 834 (*Welch*), abrogated in part by *Blakeley*, *supra*, 23 Cal.4th 82. As our Supreme Court has explained, in neither *Glenn* nor *Welch* "did the Court of Appeal engage in any analysis or cite any authority in support of its conclusion that an unintentional killing in unreasonable self-defense can only be involuntary manslaughter. Thus, neither case is persuasive authority for the proposition that intent to kill is necessary for a voluntary manslaughter conviction." (*Blakeley*, *supra*, 23 Cal.4th at p. 91.)

---

[5] Again, because we conclude that no error occurred, we need not address the issue of harmless error.

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
ASHMANN-GERST

We concur:

_____, P. J.
LUI

_____, J.
RICHARDSON

11