Filed 1/28/14  P. v. Rodriguez CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B245986 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA068402) |
| v. | |
| EDUARDO RODRIGUEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gregory A. Dohi, Judge.  Affirmed as modified.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Marc A. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

Eduardo Rodriguez appeals from the judgment entered following his conviction by jury on six counts:  kidnapping to commit another crime (Pen. Code,

§ 209, subd. (b)(1)),[1] sexual penetration by a foreign object (§ 289, subd. (a)(1)(a)), attempted forcible rape (§§ 664/261, subd. (a)(2)), kidnapping (§ 207, subd. (a)), and two counts of assault with a deadly weapon (§ 245, subd. (a)(1)).  He contends that the trial court erred in failing to declare a doubt as to his mental competence and hold a hearing pursuant to section 1368.  He also argues that the court erred in imposing a $5,000 fine pursuant to section 667.6.  We conclude that the court did not err in failing to declare a doubt as to appellant's mental competence.  However, the fine under section 667.6 was erroneously imposed.  We strike the $5,000 fine and order the imposition of the mandatory court security fee and criminal conviction assessment.  In all other respects the judgment is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

*Prosecution Evidence*

On July 17, 2011, around 10:00 p.m., Irma N. went to a nightclub in Los Angeles County, where she saw an acquaintance named Jimmy Alexander Rodriguez (known as Alex).  Appellant was also at the nightclub.  Irma N. and Alex were acquainted with appellant, and appellant and Alex shared mutual friends.

When the nightclub closed around 2:00 a.m. that night, Alex invited Irma to go with him to a friend's house, so Irma got into the passenger seat of Alex's car for him to drive her there.  Appellant approached Alex's car and got into the rear seat, telling Alex he was going wherever they were going.

Alex drove them to his friend's house but there was no one home, so he started driving back to the nightclub for Irma and appellant to retrieve their cars.

---

[1]     All further statutory references are to the Penal Code unless otherwise specified.

2

As they started driving away, appellant placed a knife against Alex's neck and threatened to cut him if he stopped driving. Appellant placed the knife against Irma's neck and threatened her, telling her she was going to die. He told Alex to continue driving and told Irma to get in the back seat with him. Appellant pulled Irma into the back seat and climbed on top of her, still wielding the knife and touching it to various parts of her body. Appellant removed Irma's underwear and attempted to rape her, but he did not have an erection. He put his finger in her vagina, touched her breasts, and put his penis in her mouth.

Alex told appellant he needed to buy gas, so he stopped at a gas station and called the police. Police officers arrived and detained appellant.

Kimberly Freeman, a DNA analyst, testified that swab samples matching appellant's DNA were taken from Irma's breasts and mouth area. Swab samples matching Irma's DNA were taken from appellant's finger and from a brown stain on his shirt.

The sexual assault nurse who collected swabs and blood from appellant testified, as did the forensic nurse examiner who examined Irma. In addition, the officer who responded to the 911 call and the detective who investigated the case both testified.

*Defense Evidence*

Mehul Anjaria, a DNA consultant, testified about the limitations of DNA testing in general and of the DNA tests performed in this case. These limitations included that it was not possible to determine with certainty whether a certain sample was saliva, and that a test of material from appellant's penis was too incomplete to be conclusive.

3

*Procedural Background*

Appellant was charged in an amended information with six counts: (1) kidnapping to commit another crime (§ 209, subd. (b)(1)); (2) sexual penetration by a foreign object (§ 289, subd. (a)(1)(A)); (3) attempted forcible rape (§§ 664/261, subd. (a)(2)); (4) assault with a deadly weapon on Irma (§ 245, subd. (a)(1)); (5) kidnapping (§ 207, subd. (a)); and (6) assault with a deadly weapon on Alex (§ 245, subd. (a)(1)). It was further alleged as to counts 1, 2, 3, and 5 that appellant personally used a deadly weapon (§ 12022, subd. (b)(1)).

The jury found appellant guilty on all counts and found the special allegations to be true. The court sentenced appellant to a term of 31 years to life calculated as follows: as to count 2, 25 years to life (§§ 289, subd. (a)(1)(A), 667.61, subds. (a), (d)); as to count 5, the midterm of five years, plus one year for the weapon allegation (§§ 207, subd. (a), 12022, subd. (b)(1)). Sentences on the other counts were imposed and stayed. Appellant filed a timely notice of appeal.

## DISCUSSION

I.   *Mental Competence*

Appellant contends that the trial court erred in failing to declare a doubt as to his competence to stand trial. He relies on several incidents and discussions during trial, recounted in detail below, to argue that the trial court should have declared a doubt as to his competence and conducted a hearing pursuant to section 1368. We conclude that the trial court did not abuse its discretion in failing to declare a doubt and hold a competency hearing.

"'Both the due process clause of the Fourteenth Amendment to the United States Constitution and state law require a trial judge to suspend proceedings and conduct a competency hearing whenever the court is presented with substantial

4

evidence of incompetence, that is, evidence that raises a reasonable or bona fide doubt concerning the defendant's competence to stand trial. [Citations.] Failure to declare a doubt and to conduct a competency hearing when there is substantial evidence of incompetence requires reversal of the judgment. [Citation.]' [Citation.] Competency under federal law requires sufficient present ability to consult with one's lawyer with a reasonable degree of rational understanding and a rational and factual understanding of the proceedings against one. [Citation.] Similarly, under state law a defendant is mentally incompetent to stand trial if, as a result of mental disorder or developmental disability, he or she is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of the defense in a rational manner. (§ 1367.)" (*People v. Halvorsen* (2007) 42 Cal.4th 379, 401 (*Halvorsen*).)

"When the evidence casting doubt on an accused's present competence is less than substantial, the following rules govern the application of section 1368. It is within the discretion of the trial judge whether to order a competence hearing. When the trial court's declaration of a doubt is discretionary, it is clear that 'more is required to raise a doubt than mere bizarre actions [citation] or bizarre statements [citation] or statements of defense counsel that defendant is incapable of cooperating in his defense [citation] or psychiatric testimony that defendant is immature, dangerous, psychopathic, or homicidal or such diagnosis with little reference to defendant's ability to assist in his own defense [citation].' [Citation.]" (*People v. Welch* (1999) 20 Cal.4th 701, 742 (*Welch*), overruled in part on another ground in *People v. Blakeley* (2000) 23 Cal.4th 82, 89.)

Appellant's argument is based on the following incidents.

On November 6, 2012, the first day of trial, appellant refused to change out of jail clothing into regular street clothes. He told the court that he wanted to

5

replace his privately-retained attorney. The court advised appellant that it would not grant a continuance, explaining that the case already had been delayed and a jury pool ordered, so any further delay would cause great inconvenience and expense. The court therefore gave appellant the choice of proceeding with his attorney or asking to represent himself. Appellant replied, "We have been delayed so long now in this trial it was – to wait for the investigator to finish. And even now he told me that the investigator has disappeared. Why so much time when the investigator hasn't done anything. There were three investigators that started, and that's why there was so much of a delay. I would like to have a just trial, Your Honor, before God, and I want you, sir, to do the right thing. You are a witness that we have changed investigators several times." Appellant also expressed frustration that, only the day before trial, defense counsel told him about a plea offer from the prosecutor. Defense counsel explained that he received the offer late in the day and expressed his readiness to proceed to trial. The court again gave appellant the choice to represent himself or to proceed with his retained attorney. Appellant replied, "I cannot represent myself. That's why I got a lawyer." He expressed frustration that he had not had sufficient time to consider the plea offer but decided to turn down the offer.

After further discussion, appellant changed into regular clothes and proceeded with the trial. Appellant's responses and comments to the court throughout the discussion were appropriate and indicated that he understood the nature of the proceedings.

The following day, after a break during jury selection, appellant refused to change his clothes and refused to leave his cell. Defense counsel stated the following regarding appellant's mental competency: "[E]arlier I made a comment that I was not having a doubt as to my client's competency. Because of the

6

behavior, I have asked him if he understands the charges, and he has responded in a manner that I do think indicates that he does understand the charges. However, I would say I have some concern about his abilities to cooperate with me rationally during this trial. Related to that, it's apparent that he's expressed suicidal thoughts. I have relayed those to the court because I believe that the court is – he's in the court's custody and the court should be aware of that. My information is that he may be subject to a suicide watch. So where we are in the trial, I think that he probably qualifies for what we would call a Welfare and Institutions Code 5150 type of treatment, but he may not qualify as a 1368 based upon my interview and my observation at this time. So I'm not sure how the court wishes to proceed."

The court asked, "First, you are not declaring a doubt at this time then?" Defense counsel replied, "That is correct."

The court then stated, "So I would also note that I have spoken to the defendant in your presence on the record, and he has shown an understanding with his situation; albeit, a deep unhappiness with his situation. He appears to be coherent, at least he did appear to be coherent yesterday. When I saw him this morning, looking at him, he is dressed appropriately and behaves appropriately. So I'm – there's nothing for me to base any sort of a finding of a doubt of his competence.

"As to how to proceed from here, the deputies have been made aware of his expressions of suicidal thoughts, and they've taken the appropriate steps. I want to deem him to have absented himself from these proceedings, and we'll just carry on. This is pursuant to Penal Code section 1043 subdivision (b)(2), which permits the court to proceed in the absence of the defendant in a non-capital case where the defendant voluntarily absents himself, . . . and that's what we've got going on right now."

A deputy who had spoken with appellant explained to the court that, "Earlier [appellant] said he wanted to hurt himself and didn't want to live, that he was ashamed. And when I brought him up just right before maybe 1:30, he said he was not going to come out and he wasn't going to dress out." Following further discussion, the court provided appellant with a portable speaker through which the interpreter translated the proceedings. Neither party objected to the procedure.

On November 9, 2012, during trial, defense counsel explained that appellant had declined an offer from the prosecutor, a decision contrary to counsel's advice. He further stated, "I've raised the issue that I did not have a doubt as to my client's competency. . . . I do not now express a doubt as to my client's competency because I do believe that he understands the nature of the charges. I've raised some concerns about his ability to cooperate with me. However, . . . it's not the actuality of cooperation but rather it's the capacity to cooperate. So those are the reasons why I'm not declaring a doubt. But I have explored the issue, and I've certainly asked him questions as I believe I'm required to."

The court replied, "All right. Thank you. So I'm making no findings with regard to that."

We conclude that appellant has not presented substantial evidence of mental incompetence. His attorney repeatedly stated that, although appellant had expressed suicidal thoughts, he understood the nature of the proceedings and was able to cooperate in his defense. There was no medical testimony, bizarre behavior, or any other indication that appellant did not understand the nature of the proceedings or was incapable of assisting counsel in the conduct of the defense in a rational manner. (See *Halvorsen*, *supra*, 42 Cal.4th at p. 401.)

Because the evidence casting doubt on his competence is less than substantial, we review the trial court's decision for an abuse of discretion. (*Welch*,

8

*supra*, 20 Cal.4th at p. 742.) "'A trial court's decision whether or not to hold a competence hearing is entitled to deference, because the court has the opportunity to observe the defendant during trial.' [Citations.]" (*People v. Howard* (2010) 51 Cal.4th 15, 45.) The transcript indicates that appellant's responses and conduct during the proceedings were appropriate. The trial court similarly observed that appellant, although deeply unhappy with his situation, understood the situation and was coherent.

The evidence simply does not show that appellant was "unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of the defense in a rational manner. (§ 1367.)" (*Halvorsen*, *supra*, 42 Cal.4th at p. 401.) The trial court therefore did not abuse its discretion in failing to declare a doubt as to appellant's competence and hold a hearing pursuant to section 1368.

Appellant relies on *People v. Lightsey* (2012) 54 Cal.4th 668, but, unlike the instant case, the evidence in *Lightsey* of the defendant's incompetence was substantial. His current and former defense counsel asked the court to declare a doubt regarding his mental competence, and several of his lawyers submitted declarations expressing doubts about his mental stability and his ability to understand the nature of the proceedings. (See *id.* at pp. 685-686, 688, 689-690.) In addition, one of two medical experts concluded he was not competent to stand trial. When defense counsel again requested that the court suspend proceedings in order to evaluate the defendant's mental competence, the court expressed the belief that the defendant voluntarily chose not to cooperate with counsel and "merely had a bad 'attitude.'" (*Id.* at p. 690.)

In sharp contrast to *Lightsey*, defense counsel here expressed the view that, although appellant might be , he understood the nature of the proceedings and was able to cooperate and so was competent to stand trial. As discussed above, there

9

was no medical evidence of his incompetence, and the transcript indicates that he responded appropriately to the court's questions and understood the proceedings.

The trial court did not err in failing to declare a doubt as to appellant's competency and hold a hearing pursuant to section 1368.

II.    *Abstract of Judgment and Fines*

Appellant contends that the trial court erred in imposing a $5,000 fine pursuant to section 667.6.  We agree.

Section 667.6 imposes sentence enhancements and allows the imposition of fines upon defendants convicted of sex offenses who have prior sex offense convictions.  As respondent concedes and the record shows, appellant does not have a qualifying prior conviction.

"A sentence is said to be unauthorized if it cannot 'lawfully be imposed under any circumstance in the particular case' [citation], and therefore is reviewable 'regardless of whether an objection or argument was raised in the trial and/or reviewing court.' [Citations.]" (*In re Sheena K.* (2007) 40 Cal.4th 875, 887.)  "An unauthorized sentence is "'subject to judicial correction when it ultimately [comes] to the attention of the trial court or [reviewing] court" [citation].' [Citation.]" (*People v. Cates* (2009) 170 Cal.App.4th 545, 552.)  We therefore order the $5,000 fine imposed under section 667.6 stricken.

Respondent contends, and appellant concedes, that the trial court erred in failing to impose a $40 court security fee per conviction (§ 1465.8, subd. (a)(1)) and a $30 criminal conviction assessment per conviction (Gov. Code, § 70373, subd. (a)(1)).  These fees are mandatory.  (*People v. Woods* (2010) 191

10

Cal.App.4th 269, 272.)  We therefore order the judgment modified to impose a $240 court security fee and a $180 criminal conviction assessment.[2]

## DISPOSITION

The judgment is modified as follows:  (1) the $5,000 fine imposed under section 667.6 is ordered stricken; (2) a $240 court security fee (§ 1465.8, subd. (a)(1)) is ordered imposed; and (3) a $180 criminal conviction assessment (Gov. Code, § 70373, subd. (a)(1)) is ordered imposed.  The clerk of the superior court is directed to prepare an amended abstract of judgment and to forward a copy to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P. J.


We concur:


MANELLA, J.                    SUZUKAWA, J.

---

[2]     Respondent erroneously calculated the fees based on seven convictions, but appellant was convicted on six counts.