Filed 7/30/25  P. v. Mejia CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. CIPRIANO CALGUA MEJIA, Defendant and Appellant. | B336254 (Los Angeles County Super. Ct. No. LA090386) |


APPEAL from a judgment of the Superior Court of Los Angeles County, Alan K. Schneider, Judge.  Affirmed.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior

Assistant Attorney General, Idan Ivri, Supervising Deputy Attorney General, and Lauren N. Guber, Deputy Attorney General, for Plaintiff and Respondent.

* * * * * *

Cipriano Calgua Mejia (defendant) appeals from his conviction of first degree premeditated murder after he stabbed his roommate to death with a pair of scissors. He contends that the trial court erred in failing to instruct the jury on the lesser-included offense of involuntary manslaughter. We conclude there was no error and alternatively, that any error was in any event harmless. We accordingly affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.     Facts

Defendant and Rolando Rabinal (Rabinal) worked together as cooks in a Chinese restaurant. In late March 2019, they started rooming together in a tiny apartment in Van Nuys owned by their employer.

In the early morning of April 21, 2019, defendant stabbed Rabinal five times with a pair of scissors. Two of the stab wounds—one to the neck and one to the chest—were fatal, and Rabinal bled out on the apartment floor.

Defendant gave two explanations of the events leading up to the stabbing.

--      In a post-arrest interview,[1] defendant stated that Rabinal regularly "bull[ied]" and "insult[ed]" defendant by calling

---

[1]     The interviewing officers provided defendant his *Miranda* warnings. Defendant later moved to suppress his statements on the ground he did not understand the warnings, but the trial court denied his motion.

2

him "trash" and insisting that he was "better than" defendant, that defendant had "got[ten] tired of it," and that on the night of the stabbing defendant "exploded," "grabbed the scissors" and "got [Rabinal]." Although defendant repeatedly stated he was "drunk" because he had "about six" Corona beers, defendant's blood alcohol level was .04 percent (which is half the legal limit to drive). Defendant first reported that he "grabbed the scissors that were on [a nearby] table," but subsequently stated that he retrieved the scissors from the bathroom before stabbing Rabinal with them. At no point did defendant indicate that *Rabinal* ever held the scissors.

-- At trial, defendant testified that Rabinal "forced" defendant to drink alcohol with him nearly every night, that Rabinal would threaten defendant "every night," and that Rabinal would also get "violent" by punching or kicking defendant three or four nights a week. On the night of April 21, 2019, Rabinal forced defendant to drink with him, and proceeded to "harass[]" defendant by saying his salary was "a pittance" and that he "wasn't worth anything." Rabinal then retrieved a pair of scissors from the bathroom and came at defendant, trying to "stab" him with the scissors. Defendant got "scared," as Rabinal's aggression brought back memories of his being beaten by his father as a child. Defendant ran to the front door, but then decided to stay and to continue drinking with Rabinal because Rabinal calmed back down. At some point thereafter, Rabinal "suddenly" rose from his chair, grabbed a beer bottle and pulled back his arm as if to strike defendant with the bottle. Defendant then "grabbed something" off the table, but did not know what object it was, and "hit" Rabinal with it.

3

## II. Procedural Background

The People charged defendant with murder (Pen. Code, § 187, subd. (a)).[2]  In the operative first amended information, the People further alleged that defendant personally used a deadly and dangerous weapon—a pair of scissors—in the commission of the murder.  (§ 12022, subd. (b)(1).)[3]

The matter proceeded to a jury trial in January 2024.  The trial court instructed the jury on the crime of murder, including the definitions of express and implied malice (using CALCRIM No. 520) as well as first degree premeditated murder, which requires a showing of "inten[t] to kill" (using CALCRIM No. 521); on the crime of voluntary manslaughter as a lesser-included offense, both due to heat of passion (using CALCRIM No. 570) and due to imperfect self-defense (using CALCRIM No. 571); on perfect self-defense (using CALCRIM No. 505); on voluntary and involuntary intoxication (using CALCRIM Nos. 625 and 3427, respectively); and on mental disorders (using CALCRIM No. 3428).  The court also instructed the jury on the order in which to consider the various offenses, specifying that the jury should first determine if defendant committed first degree premeditated murder.  The trial court explicitly declined to instruct on the

---

[2]  All further statutory references are to the Penal Code unless otherwise indicated.

[3]  The People also alleged several aggravating factors—namely, (1) that the crime involved great violence, great bodily harm, threat of great bodily harm, and other acts disclosing a high degree of cruelty, viciousness, and callousness (Cal. Rules of Court, rule 4.421(a)(1)), and (2) that defendant engaged in violent conduct that indicates he is a serious danger to society (*id.*, rule 4.421(b)(1)).

4

crime of involuntary manslaughter as a lesser-included offense.

The jury convicted defendant of first degree premeditated murder and found true the personal use allegation.

The trial court sentenced defendant to prison for 26 years to life, comprised of a base sentence of 25 years to life for first degree murder plus an additional one year for the personal use enhancement.

Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant argues that the trial court erred in not instructing the jury on the lesser-included offense of involuntary manslaughter.

## I. Did the Trial Court Err?

As part of its duty to instruct the jury on generally applicable principles of law, a trial court may be required on its own to instruct the jury not only on the charged offense, but also on any lesser offense that is necessarily included in the charged offense. (*People v. Breverman* (1998) 19 Cal.4th 142, 154-155, overruled on other grounds by *People v. Schuller* (2023) 15 Cal.5th 237, 260, fn. 7 (*Schuller*).) The duty to instruct on a lesser-included offense arises if the record, when viewed in the light most favorable to the defendant, contains "'substantial evidence'" from which a reasonable jury could conclude that the defendant committed "'"the lesser offense, but not the greater"'" offense. (*People v. Wilson* (2021) 11 Cal.5th 259, 298; *People v. Whalen* (2013) 56 Cal.4th 1, 68; *People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137.) We review de novo a trial court's decision not to instruct on a lesser-included offense (*People v. Licas* (2007) 41 Cal.4th 362, 366); in so doing, we review the trial

5

court's *ruling*, and not its *reasoning* (*People v. Chism* (2014) 58 Cal.4th 1266, 1295, fn. 12).[4]

Defendant was charged with murder, which is the "unlawful killing of a human being . . . with malice aforethought." (§ 187, subd. (a).) "Malice" may be express or implied: Malice is express when the defendant acts with an intent to kill (*People v. Soto* (2018) 4 Cal.5th 968, 976; § 188, subd. (a)(1)); malice is implied "when an unlawful killing results from a willful act, the natural and probable consequences of which are dangerous to human life, performed with conscious disregard for that danger" (*People v. Elmore* (2014) 59 Cal.4th 121, 133; § 188, subd. (a)(2)). Involuntary manslaughter is a lesser-included offense to the crime of murder. (*People v. Thomas* (2012) 53 Cal.4th 771, 813.) Involuntary manslaughter occurs when a defendant, while acting in a criminally negligent manner (and hence "without malice"), commits an "unlawful killing" during the commission of (1) an unlawful act (§ 192, subd. (b)); (2) a misdemeanor (*ibid.*); (3) a noninherently dangerous felony (*People v. Burroughs* (1984) 35 Cal.3d 824, 835, overruled in part on other grounds by *People v. Blakeley* (2000) 23 Cal.4th 82, 89); or (4) an inherently dangerous assaultive felony (*People v. Brothers* (2015) 236 Cal.App.4th 24, 33-34 (*Brothers*)). (*People v. Cox* (2000) 23 Cal.4th 665, 672 (*Cox*) ["'act' underlying the offense of involuntary manslaughter 'must be committed with criminal intent or criminal negligence'"]; *People v. Butler* (2010) 187 Cal.App.4th 998, 1007 (*Butler*) ["criminal negligence is the governing mens rea standard" for first three types of involuntary manslaughter enumerated above].)

---

4  Defendant's attacks on the trial court's reasoning thus provide no basis unto themselves for reversal.

We conclude that the trial court did not err in declining to instruct the jury on the lesser-included offense of involuntary manslaughter in this case because no reasonable jury could find defendant guilty of involuntary manslaughter but not guilty of murder. Because we must view the record in the light most favorable to defendant (and thus not assess credibility), we will examine each of defendant's inconsistent explanations separately.

No reasonable jury could find defendant guilty of involuntary manslaughter but not murder based on the account of events defendant laid out in his post-arrest statement. In that statement, defendant explained that he stabbed Rabinal repeatedly because, after enduring Rabinal's taunts, defendant "got tired of it" and finally "exploded" in a burst of homicidal violence. In this scenario, defendant's conduct in intentionally stabbing Rabinal with a pair of scissors in the neck and chest in response to a fit of pique constitutes implied malice as a matter of law, thus making it impossible for a reasonable jury to find him guilty of involuntary manslaughter *but not murder*. (*Brothers*, *supra*, 236 Cal.App.4th at p. 35 ["when, as here, the defendant indisputably has deliberately engaged in a type of aggravated assault the natural consequences of which are dangerous to human life, [that] satisf[ies] the objective component of implied malice as a matter of law" and defendant is not entitled to an involuntary manslaughter instruction]; *People v. Smith* (2021) 70 Cal.App.5th 298, 310-311 (*Smith*) [defendant not entitled to involuntary manslaughter instruction when she hit the victim in the head with a hammer].)

No reasonable jury could find defendant guilty of involuntary manslaughter but not murder based on the account

7

of events defendant testified to at trial.  In that testimony, defendant testified that he grabbed an unknown object from the table and then hit Rabinal with that object in order to block Rabinal's incoming attack with a beer bottle.  Defendant argues that, in this scenario, he committed an "inherently dangerous assaultive felony"—and did so without malice—because he did not know that the object he grabbed was a pair of scissors.  This argument fails because, if the defendant did not know what the object was, he did not commit an inherently dangerous assaultive felony (or, for that matter, any felony, misdemeanor or unlawful act).  The crime of assault is not inherently dangerous in the abstract (*Cox*, *supra*, 23 Cal.4th at pp. 670, 674), and more to the point, under the circumstances posited by defendant (*id.* at pp. 673-674; *Butler*, *supra*, 187 Cal.App.4th at p. 1007), it was not an assault at all.  That is because an assault requires proof that defendant is "aware of the facts that would lead a reasonable person to realize that a battery would directly, naturally and probably result from his conduct." (*People v. Williams* (2001) 26 Cal.4th 779, 788; *In re B.M.* (2018) 6 Cal.5th 528, 533-534.)  If defendant did not know what the object was—whether due to lack of attention or a mental defect—then he lacked the requisite intent to commit an assault.  (Accord, *Smith*, *supra*, 70 Cal.App.5th at pp. 311-312 [defendant not entitled to involuntary manslaughter instruction because defendant's "dream-like state" meant she did not commit an assault].)  Because some objects (like scissors) would reasonably result in a battery while other objects (like a stuffed animal or a pillow) would not, it is only when a defendant *knows* what the object is that he can be aware of the facts that would lead a reasonable person to realize a battery would reasonably result from its use (and thus constitute

8

an assault).  Defendant asserts that the object he grabbed was "most likely" a beer bottle or a pair of scissors, but there is no evidence to support this assertion and if defendant *knew* it was either a beer bottle or scissors, his act of thrusting that object into Rabinal's neck and chest constitutes implied malice, for the reasons discussed above.

## II.    Was Any Error Harmless?

Even if we assume that the trial court erred in not instructing the jury on the lesser-included offense of involuntary manslaughter, that error was harmless.  As our Supreme Court has held time and again, where a jury is properly instructed on first degree premeditated murder, second degree murder and heat-of-passion voluntary manslaughter, the jury's conviction of the crime of first degree premeditated murder renders harmless any error in not instructing the jury on the lesser-included offense of involuntary manslaughter because the "jury['s] reject[ion of] the lesser options" available to it means "there is no reasonable probability that, had the jury been instructed on involuntary manslaughter, it would have chosen that option." (*People v. Rogers* (2006) 39 Cal.4th 826, 884; *People v. Barnett* (1998) 17 Cal.4th 1044, 1155-1156 [same].)  Defendant effectively argues that the Supreme Court's recent decision in *Schuller*, *supra*, 15 Cal.5th 237 overrules these earlier cases because *Schuller* laid down a new rule requiring that harmlessness for failure to instruct on a lesser-included offense be evaluated under the more stringent "harmless beyond a reasonable doubt" test. Defendant misreads *Schuller*.  Although *Schuller* held that error in failing to instruct on the lesser-included offense of voluntary manslaughter based on imperfect self-defense was to be evaluated using the harmless beyond a reasonable doubt

9

standard, *Schuller* explained that this more onerous test was necessitated by the fact that "failure to instruct on imperfect self-defense amounts to an incomplete instruction on an actual element of murder, namely malice," thereby constituting a constitutional violation warranting application of a more stringent harmless error test. (*Id.* at pp. 243-244.) There is no "flip side of the same coin" problem when a court fails to instruct on the crime of involuntary manslaughter because murder requires malice and involuntary manslaughter requires no malice.

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P. J.

HOFFSTADT


I concur:


_____, J.

MOOR

People v. Mejia
B336254


KIM (D.), J., Concurring


I join in part II of the majority's discussion. Because any assumed error was harmless, I agree that defendant's conviction should be affirmed.


KIM, (D.), J.


1