Filed 10/13/15  P. v. Pintor and Valtierra CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>RAFAEL PINTOR AND RAFAEL MARTINEZ VALTIERRA,<br><br>    Defendants and Appellants. | G049653<br><br>(Super. Ct. No. 10NF1124)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING<br>[NO CHANGE IN JUDGMENT] |

The opinion filed September 16, 2015, is modified as follows:

1.  On page 4, in the first paragraph, at the end of the third sentence, add the following as footnote number 1:

"In his petition for rehearing, Pintor contends there was no evidence he personally possessed a gun.  Not so.  The videotape of the incident marked as Exhibit 3 and introduced as evidence at trial shows Pintor holding an object that looks like a gun and putting that object in the waistband of his pants in a manner consistent with gun possession.  Pintor correctly notes the People did not charge him with personal gun possession, nor did the prosecutor argue he personally possessed a gun.  These facts are irrelevant."

2. Renumber footnote 1 on page 7 to footnote 2.

This modification does not change the judgment. The petition for rehearing is DENIED.

THOMPSON, J.

WE CONCUR:

MOORE, ACTING P. J.

ARONSON, J.

Filed 9/16/15  (unmodified version)

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RAFAEL PINTOR AND RAFAEL MARTINEZ VALTIERRA,<br><br>    Defendants and Appellants. | G049653<br><br>(Super. Ct. No. 10NF1124)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, David A. Hoffer, Judge.  Affirmed as modified.

Christopher Nalls, under appointment by the Court of Appeal, for Defendant and Appellant Rafael Pintor.

Kevin D. Sheehy, under appointment by the Court of Appeal, for Defendant and Appellant Rafael Martinez Valtierra.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

*        *        *

A jury convicted Rafael Pintor and Rafael Martinez Valtierra (collectively defendants) of the attempted murders of Danny L. and Christian B. (Pen. Code, §§ 664, 187, subd. (a); counts 2, 3; all further statutory references are to the Penal Code) and street terrorism (§ 186.22, subd. (b); count 4), and found true an allegation the attempted murders were willful, deliberate, and premeditated (§ 189).

The jury also found Valtierra committed the attempted murders for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)), personally inflicted great bodily injury (§ 12022.7, subd. (a)), intentionally and personally discharged a firearm causing great bodily injury or death (§ 12022.53, subd. (d)), and personally discharged a firearm (§ 12022.5, subd. (a)). The court sentenced Valtierra to a term of 40 years to life.

The jury also found Pintor committed the attempted murders for the benefit of a criminal street gang (§ 182.22, subd. (b)(1)) and vicariously discharged a firearm causing great bodily injury (§ 12022.53, subds. (d), (e)(1)). Pintor admitted having a prior "strike" (§§ 667, subds. (d), (e)(1), 1170.12, subds. (b), (c)(1)) and a prior serious felony conviction (§ 667, subd. (a)(1)). The court sentenced Pintor to a term of 39 years to life, plus five years.

Defendants argue substantial evidence triggered the court's sua sponte duty to instruct on the lesser included offense of attempted voluntary manslaughter under a theory of provocation and heat of passion. We conclude the error, if any, is harmless because the jury resolved adversely to defendants the factual question posed by the omitted instruction.

Pintor challenges the sufficiency of the evidence to prove he shared Valtierra's intent to kill, as required to sustain a conviction for attempted premeditated murder under principles of aider and abettor liability. We conclude the record contains substantial circumstantial evidence Pintor assisted, supported, and encouraged Valtierra with knowledge Valtierra intended to kill the victims.

2

Finally, Valtierra asserts he is entitled to one additional day of presentence custody credit, and the Attorney General concedes the point. We agree and modify the judgment accordingly. With this modification, the judgment is affirmed.

**FACTS**

*1. Prosecution Case*

*a. Gang Background*

In 2010, defendants were members of East Side Buena Park (ESBP), a criminal street gang. EBSP claims the neighborhood around Franklin Avenue and Kingman Street in Buena Park as its turf or territory.

The victims, Danny and Christian, were members of Fullerton Tokers Town (FTT), another criminal street gang and one of ESBP's gang rivals. FTT claimed the area around the 400 block of West Valencia Drive in Fullerton as its territory.

*b. The Crime*

In April 2010, residents of West Valencia Drive saw Pintor drive his parents' truck up and down their street before coming to a stop in front of a house in the 400 block (referred to hereafter as the house). Witnesses said there were two males inside the truck. They identified Valtierra as Pintor's passenger. One of the two yelled, "East Side Buena Park," which led to a fist fight with the male occupants of the house.

Four days later, Pintor and Valtierra returned to West Valencia Drive and they brought two guns with them. According to a video recovered from a liquor store next to the house and witness statements, Pintor's truck is first seen driving on the opposite side of West Valencia Drive, but he makes a U-turn to head back toward the house. At the time, Danny, Christian, and three or four other unidentified male juveniles were standing outside the house. Danny was riding a scooter on the sidewalk.

As the truck passed by the house, someone on the street yelled, "Buena Park." Valtierra responded, "Fuck East Side Fullerton." Danny, Christian and the other young men charged the truck. Christian threw his scooter, and it hit the rear window.

3

The truck stopped abruptly. Danny, Christian, and the other members of their group turned and scattered while defendants jumped out of the truck, guns in hand. Pintor ran around the front of the truck and stood by Valtierra as Valtierra pointed his gun at two of the fleeing victims and then ran after them. Pintor stood by the truck with his gun at his side briefly before he got back into the truck. Pintor drove away after Valtierra returned to the truck.

Bleeding and dazed, Danny and Christian went to neighbors for help. Paramedics transported them to the hospital. Christian had a blowout fracture to his finger, which required irrigation, suturing, and antibiotics. Danny had rib and scapula fractures, bruised lungs, and a gunshot wound to the chest. He spent the night in the hospital and has bullet fragments permanently lodged in his chest.

*c. Investigation*

Within minutes of the shooting, Buena Park Police Officer Ronald Catanzariti received a radio dispatch with a description of Pintor's truck. About 30 minutes later, Catanzariti saw Pintor's truck parked along the curb on Franklin Street at Kingman Avenue in Buena Park, which is about four miles from the scene of the shooting and in ESBP's claimed turf.

Catanzariti initially saw defendants standing by the truck, but when Catanzariti made eye contact with them, defendants got into the truck and drove away. Catanzariti followed them without activating his lights or sirens. When the truck stopped, Pintor and Valtierra fled. Catanzariti and another officer quickly found and arrested Valtierra. Pintor was arrested the following day.

A search of Pintor's truck yielded a small caliber bullet on the passenger side floorboard. Crime scene investigators found a live round, three expended shell casings, and a bullet fragment at the shooting scene. A firearms expert determined two of the casings were fired from either a .22-caliber handgun or rifle. The other casing was from a .22-caliber rifle.

4

### d. Gang Evidence

Buena Park Police Detective James Woo testified as the prosecution's gang expert. He explained gang culture, defined frequently used terms, and discussed the behavioral patterns and expectations of gang members. Woo said "putting in work for the gang" means committing crimes for the gang, and committing crimes enhances the reputation of the gang member and the gang. When committing crimes, gang members are expected to provide backup to one another.

Woo also explained that notions of respect in gang culture drive many of the violent crimes committed by gang members. Acts of disrespect can be as simple as a hard stare, or "mad dogging," but a violent response is likely. Yelling the gang's name during crimes helps to establish the gang's identity and respect. Committing violent crimes enhances respect, as does using firearms. Woo said gang members communicate when one of them is armed, and that a gang member who participated in a shooting on a rival gangs' turf would gain respect.

### 2. Defense

#### a. Pintor's Testimony

Pintor testified he joined ESBP when he was 15 years old, and he has been shot at and attacked many times since then. He acknowledged the brutality of the gang lifestyle, explaining "[i]t's vice versa. You're a gang member . . . they attack you, you attack them." He also admitted gang members carry weapons, saying, "there are some of us that carry guns, carry knives, bats, [and] crowbars." Pintor also confessed that he and Valtierra put a .22-caliber rifle in the truck, "just in case somebody runs up on us, or if something happens, you know, so we can defend ourselves."

According to Pintor, he and Valtierra worked on the day of the shooting. After work, they drove to a liquor store in Buena Park, bought two 40-ounce cans of malt liquor, and drove to a park to drink it. After drinking their beer, defendants left the park, drove to a grocery store, and stole more beer before returning to the park to drink it. At

this point, defendants decided to drive around, and eventually they ended up on West Valencia Drive in Buena Park.

Pintor testified the scooter hitting his truck sounded "like the first time I got shot at" "I just hear like pa, you know?  And then – and then whatever happened happened."  He said he stopped the truck, "[a]nd then yeah, Valtierra got out of the car, and what happened, happened, you know."

### b. Defense Argument

Defendants claimed the scooter hitting the back of the truck caused them to either reasonably or unreasonably believe their lives were in danger.  As Valtierra's attorney explained, "Self-defense.  Okay.  Again, major concept in this case.  Both actual self-defense and imperfect self-defense.  They're both real important in this case." Defendants asserted Christian instigated the confrontation, and they responded to a perceived threat.  Defendant's also argued their gang-generated hyper-vigilance, and intoxication, altered their perception, making them act out of fear, and not from any deliberately conceived plan to kill.

## DISCUSSION

### 1. Instructional Error

#### a. Standard of Review Claimed Instructional Error

Defendants challenge the adequacy of the court's instructions on attempted murder.  The trial court must instruct the jury, with or without a request, on the general principles of law "closely and openly connected with the facts presented at trial." (*People v. Wickersham* (1982) 32 Cal.3d 307, 323, disapproved on other grounds in *People v. Barton*, *supra*, 12 Cal.4th at pp. 200-201.)  The court's obligation extends to lesser-included offenses if the evidence "'raises a question as to whether all of the elements of the charged offense are present and there is evidence that would justify a conviction of such a lesser offense.'"  (*People v. Lopez* (1998) 19 Cal.4th 282, 287; *People v. Barton* (1995) 12 Cal.4th 186, 195, fn. 4.)

6

However, an "[e]rror in failing to instruct the jury on a lesser included offense is harmless when the jury necessarily decides the factual questions posed by the omitted instructions adversely to defendant under other properly given instructions." (*People v. Lewis* (2001) 25 Cal.4th 610, 646.)  Further, under *People v. Watson* (1956) 46 Cal.2d 824, 836, there must be "a reasonable probability, not a mere theoretical possibility, that the instructional error affected the outcome of the trial."  (*People v. Blakeley* (2000) 23 Cal.4th 82, 94, 96, italics omitted.)

### b.  Defendants' Argument

The court instructed the jury on attempted murder (CALCRIM No. 600), deliberation and premeditation (CALCRIM No. 601), justifiable homicide/self-defense (CALCRIM No. 505), attempted voluntary manslaughter based on imperfect self-defense or defense of another (CALCRIM No. 604), and voluntary intoxication as it affects deliberation and premeditation (CALCRIM No. 625).

Defendants did not request instructions on attempted voluntary manslaughter based on provocation and heat of passion.[1]  They assert evidence Christian threw his scooter and hit the back of Pintor's truck triggered the court's duty to instruct on attempted voluntary manslaughter under a theory of provocation and heat of passion without a request.  The Attorney General argues the evidence did not necessitate giving such an instruction, but assuming otherwise, any error was harmless.  We agree, but find the final point determinative.

---

[1]  CALCRIM No. 603 states, in pertinent part, "attempted murder is reduced to attempted voluntary manslaughter if the defendant attempted to kill someone because of a sudden quarrel or in the heat of passion.  [¶] The defendant attempted to kill someone because of a sudden quarrel or in the heat of passion if:  [¶] . . . [¶] 1. The defendant took at least one direct but ineffective step toward killing a person;  [¶] 2. The defendant intended to kill that person;  [¶] 3. The defendant attempted the killing because (he/she) was provoked;  [¶] 4. The provocation would have caused a person of average disposition to act rashly and without due deliberation, that is, from passion rather than from judgment;  [¶] AND [¶] 5. The attempted killing was a rash act done under the influence of intense emotion that obscured the defendant's reasoning or judgment."

7

True, the evidentiary basis for the heat of passion instruction is weak. Defendants were long-time gang members and they repeatedly made incursions into a rival gang's turf. They issued verbal taunts the first time. However, they brought guns the second time. Woo explained the role of firearms in gang culture, and he testified that long-time gang members, like defendants, would know taunts and turf violations lead to violence. Thus, when the victims responded to defendants' second round of gang challenges in a manner consistent with their mutual lifestyle, and defendants escalated that violence from verbal taunts, fisticuffs, and thrown scooters, to shootings, the notion they were simply reacting rashly and without due deliberation seems farfetched.

Defendants claim they reacted rashly to the loud noise caused by Christian's scooter, and that only instructions on attempted voluntary manslaughter under provocation and heat of passion afforded them the possibility of a conviction on attempted voluntary manslaughter. We disagree.

The court gave CALRIM No. 601, an instruction on premeditation and deliberation that states, "The amount of time required for deliberation and premeditation may vary from person to person and according to the circumstances. *A decision to kill made rashly, impulsively, or without careful consideration of the choice and its consequences is not deliberated and premeditated.*" Defendants do not challenge the adequacy or propriety of this instruction, and it forced the jury to determine the factual issue defendants now claim the court's failure to instruct precluded.

The jury, with the option to find defendants acted rashly and without reflection, nevertheless found defendants intentionally, and after reflection, tried to kill the victims. And premeditation and deliberation is the antithesis mental state to voluntary manslaughter under provocation and heat of passion. (*People v. Pearson* (2013) 56 Cal.4th 393, 440; *People v. Wharton* (1991) 53 Cal.3d 522, 572 [The mental state for intentional attempted murder "is manifestly inconsistent with having acted under the heat of passion"].)

8

In short, the theory of provocation and heat of passion requires evidence the defendant acted through "strong passion aroused by a 'provocation' sufficient to cause an "'ordinary [person] . . . to act without due deliberation and reflection.'"'" (*People v. Breverman, supra,* 19 Cal.4th at p. 163.)  But defendants' jury resolved that factual question adversely to their position by finding premeditation and deliberation under other properly given instructions.  Thus, the error, if any, was harmless. (*People v. Elliot* (2005) 37 Cal.4th 453, 475; *People v. Lewis, supra,* 25 Cal.4th at p. 646.)

*2. Sufficiency of the Evidence*

Pintor also challenges the sufficiency of the evidence to prove he aided and abetted Valtierra.  When addressing such claims, the reviewing court evaluates the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  (*Jackson v. Virginia* (1979) 443 U.S. 307, 318-319; *People v. Story* (2009) 45 Cal.4th 1282, 1296; *People v. Johnson* (1980) 26 Cal.3d 557, 578.)

The substantial evidence standard also applies when the prosecution relies primarily on circumstantial evidence.  (*People v. Zamudio* (2008) 43 Cal.4th 327, 357-358.)  On review, we accept any logical inferences the jury could have drawn from the circumstantial evidence because the jury, not the reviewing court, must be convinced of the defendant's guilt beyond a reasonable doubt.  (*Ibid.*)

Aider and abettor liability is premised on the aider and abettor's mental state and the acts of the principals.  (*People v. McCoy* (2001) 25 Cal.4th 1111, 1120.)  When the intended crime is murder or attempted murder, the aider and abettor must know and share the murderous intent of the actual perpetrator.  (*Id.* at p. 1118.)

Pintor is a long-time ESBP gang member.  He twice drove Valtierra, another long-time ESBP gang member, into their rival's claimed turf.  The first time they yelled their gang name and recognized FTT insults, the result of which was a fist fight.

9

When Pintor drove Valtierra to the same neighborhood four days later, both of them had guns. When their taunting provoked the victims to rush the truck and Christian threw his scooter, defendants jumped out of the truck with guns in their hands and stood united against a group of fleeing FTT gang members. Then, while Valtierra chased and shot at two of the fleeing victims, Pintor took his gun and returned to the truck in preparation for their getaway. On this record, the evidence is sufficient to find Pintor encouraged and assisted Valtierra with full knowledge Valtierra intended to kill the victims.

Pintor also relies heavily on Christian's decision to throw the scooter to argue he reacted without thinking. We are not persuaded. Pintor and Valtierra instigated the confrontation. Furthermore, Pintor assisted a fellow gang member commit a shooting in rival gang territory. As Woo explained, "putting in work for the gang" means committing crimes for the gang, and he testified gang members are expected to help each other during the commission of crimes. Woo discussed the concepts of turf and respect, and the tendency of gang members to react violently to assaults on either. As Pintor admitted, in gangland, "they attack you, you attack them." Seen in that light, defendants' crime has all the earmarks of a classic premeditated and gang-related tit-for-tat.

Given the recent history between defendants and FTT gang members in the 400 block of West Valencia Drive, the long-standing rivalry between their respective gangs, the gang expert's testimony about gang loyalty, backup, respect, and turf, and Pintor's admissions, substantial evidence supports the jury's determination Pintor shared Valtierra's intent to kill. Pintor denied premeditating the attempted murders, and he denied sharing Valtierra's intent. But the jury was free to disbelieve him when, as here, circumstantial evidence supports such an inference. (*People v. Beeman* (1984) 35 Cal.3d 547, 558-559.) Thus, a rational trier of fact could find, beyond a reasonable doubt, defendants committed willful, deliberate, and premeditated attempted murder. (*People v. Lewis*, *supra*, 46 Cal.4th at p. 1293.)

10

*3. Custody Credits*

The trial court awarded Valtierra 1,388 days of actual presentence custody credit plus 208 days of conduct credit. Valtierra claims, and the Attorney General concedes, he is entitled to one additional day of presentence custody credit. We agree.

**DISPOSITION**

Valtierra's abstract of judgment is modified to reflect an award of 1,567 presentence custody credits comprised of 1,389 actual days plus 208 conduct days. The clerk of the court shall send a copy of the modified abstract to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.


THOMPSON, J.

WE CONCUR:


MOORE, ACTING P. J.


ARONSON, J.


11